Darrell Ray **WRIGHT**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 49576.

Court of Criminal Appeals of Texas.

Sept. 17, 1975.

**860**

Gerald M. Brown, Temple, for appellant.

Joe Carroll, Dist. Atty., Bob D. Odom, Asst. Dist. Atty., Belton, Jim D. Vollers, State's Atty., David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This appeal is taken from a conviction for statutory rape under Article 1183 of the former Penal Code wherein the punishment was assessed at 30 years' imprisonment by the jury after the appellant had elected to be punished under the new Penal Code.

The indictment which was presented on May 23, 1973, alleged the offense occurred "on or about 10th day of May, A.D. 1973". The trial commenced on May 6, 1974, after the effective date of the new Penal Code (January 1, 1974). Since the proper resolution of several of appellant's grounds of error revolves around the fact the alleged offense occurred before the effective date of the new Penal Code and trial was conducted thereafter, we set forth the Saving Provisions accompanying the enactment of the new Penal Code which are particularly applicable to the grounds of error involved.

"Sec. 6. Saving Provisions. (a) Except as provided in Subsections (b) and (c) of this section, this Act applies only to offenses committed on or after its effective date, and a criminal action for an offense committed before this Act's effective date is governed by the law existing before the effective date, which law is continued in effect for this purpose, as if this Act were not in force. For purposes of this section, an offense is committed on or after the effective date of this Act if any element of the offense occurs on or after the effective date.

(b) Conduct constituting an offense under existing law that is repealed by this Act and that does not constitute an offense under this Act may not be prosecuted after the effective date of this Act. If, on the effective date of this Act, a criminal action is pending for conduct that was an offense under the laws repealed by this Act and that does not constitute an offense under this Act, the action is dismissed on the effective date of this Act. However, a conviction existing on the effective date of this Act for conduct constituting an offense under laws repealed by this Act is valid and unaffected by this Act. For purposes of this section, 'conviction' means a finding of guilt in a court of competent jurisdiction, and it is of no consequence that the conviction is not final.

(c) In a criminal action pending on or commenced on or after the effective date of this Act, for an offense committed before the effective date, the defendant, if adjudged guilty, shall be assessed punishment under this Act if he so elects by written motion filed with the trial court before the sentencing hearing begins."

■ Initially appellant urges the trial court erred in refusing to dismiss the indictment in light of Section 6(b) of the above quoted Saving Provisions. He advances the contention that since the offense of statutory rape under Article 1183, V.A.P.C.1925, includes as an element of that offense a requirement that the complaining witness be under 18 years of age and since the offense of rape of a child under the new Penal Code (V.T.C.A., Penal Code, Section 21.09) requires that the complaining witness be under 17 years of age, Section 6(b), *supra,* calls for dismissal. We do not agree. Section 6(b), *supra,* speaks to "conduct constituting an offense". It does not provide that any offense under the former Penal Code must be carried forward into the new Code with precisely the same elements in order to avoid dismissal under Section 6(b), *supra.* Practically every offense carried forward has been altered in language and many consist of different elements and some have been divided into separate offenses. Section 6(b), *supra,* however, only requires dismissal in those cases where the "conduct constituting the offense" under the former Code no longer constitutes an offense. See *Rockwood v. State,* 524 S.W.2d 292 (Tex.Cr.App.1975). It is clear that the conduct of the appellant which constituted an offense under the former statutory rape statute also constitutes an offense under the new rape of a child statute. Specifically with respect to the issue of age, it was uncontroverted the prosecutrix was under 17 years of age at the time of the offense, to-wit: 15 years of age, rendering the "conduct" in that respect within the prohibition of both the old and new statutes. If the prosecutrix had been 17 years of age, a different question would have been presented. See *Ex parte Davila,* (Tex.Cr.App.No. 50,334 delivered 7/16/1975).

Appellant's contention is overruled.

■ Appellant next complains of the trial court's action in granting the State's motion in limine prohibiting evidence of the prosecutrix's unchastity until the issue of consent was raised. Appellant acknowledges that under Article 1183, V.A.P.C. 1925, this Court has repeatedly held that if the prosecutrix is 15 years or older the accused in consent cases may show, as a defense, that she was not of previous chaste

character, but that unchastity is no defense to prosecution where there is no issue of consent. See *Esquivel v. State,* 506 S.W.2d 613 (Tex.Cr.App.1974); *Lewis v. State,* 500 S.W.2d 167 (Tex.Cr.App.1973); *Beshears v. State,* 461 S.W.2d 122 (Tex.Cr.App.1970). Appellant reasons that sexual promiscuity is a defensive issue by nature of V.T.C.A., Penal Code, Section 21.09(b) regardless of whether consent is made an issue. Appellant perfected his claim for review by showing what evidence he would have offered. We find appellant's contention to be without merit. By virtue of the plain language of Section 6(b) of the Saving Provisions, the criminal action in this case was governed by the prior law. The appellant was charged with statutory rape and was tried for that offense. Section 21.09(b), *supra,* therefore, was not applicable at appellant's trial. Only recently in *Pesch v. State,* 524 S.W.2d 299 (Tex.Cr.App.1975), and in *McCarter v. State,* 527 S.W.2d 296 (Tex.Cr.App.—delivered 7/16/1975), this court held that the trial court did not err in submitting the defense of insanity under the law as it existed at the time of the commission of the offense although the trial took place after the effective date of the new Penal Code.

Appellant also complains of the trial court's action in overruling his objection to the court's charge at the guilt stage of the trial, since such charge permitted the jury to find him guilty of "conduct" which no longer constituted an offense after January 1, 1974. This ground of error is a different shading of the first ground of error and is overruled for the same reason. The submission of statutory rape by the court's charge was in direct compliance with the dictates of Section 6(b), *supra.*

In three grounds of error appellant complains that the trial court erred in overruling his objections to the court's charge at the penalty stage of the trial, since he was not indicted for "conduct" which would constitute the offense of aggravated rape of a child under V.T.C.A. Penal Code, Section 21.03, that the indictment did not allege he compelled submission to rape by threat of death, serious bodily injury or kidnapping, that the verdict forms submitted with the charge permitted the jury to assess punishment for "conduct" for which he had not been indicted.

The appellant was indicted for the former Penal Code offense of statutory rape. This was the offense he was tried for after the effective date of the new Penal Code, and this was the offense for which he was convicted at the guilt stage of the trial. Under the circumstances of this case the appellant remains convicted of the former Code offense despite his written election to be punished under the new Penal Code. *Jefferson v. State,* 519 S.W.2d 649 (Tex.Cr. App.1975).

Here the appellant filed his written election to be punished under the new Penal Code at the commencement of the trial, although he was not required to make this election until the "sentencing hearing begins" (Section 6(c), Saving Provisions, New Penal Code, *supra* ).[1] As a result of the written election, the trial court was confronted at the penalty stage of the trial with the problem of substituting the new Penal Code penalty provisions for the old Code offense of statutory rape of which appellant was convicted at the guilt stage of the trial. Evidence offered at the penalty stage of the trial involved State's witnesses who testified that appellant's reputation for being a peaceful and law-abiding citizen was "bad" and a stipulation of appellant's prior convictions. The appellant recalled the prosecutrix, who admitted that "less than a year" prior to the alleged offense she had committed *an* act of sexual intercourse with her boyfriend at that time. It was upon this proof and the evidence offered at the guilt stage of the proceed-

---

1. The phrase "sentencing hearing" has been interpreted to mean the penalty stage of the bifurcated trial as contemplated by Article 37.07, V.A.C.C.P., rather than under Article 42.07, V.A.C.C.P. (Reasons to prevent sentence). See *Stephenson v. State,* 517 S.W.2d 277 (Tex.Cr.App.1975).

ings that the trial court had to draft his charge at the penalty stage of the trial in light of the appellant's election to be punished under the new Penal Code, and varied provisions relating to the offense of rape. This court in its charge informed the jury that the punishment for "rape of a child" was for a term of years not less than two nor more than twenty and a possible fine not to exceed $10,000.[2] The court also instructed the jury that the punishment for aggravated rape of a child was by confinement for life or any term of years not less than five nor more than ninety-nine.[3] The court also instructed the jury what would constitute aggravated rape of a child under the provisions of V.T.C.A., Penal Code, Sec. 21.03. The verdict forms submitted were designed to reflect whether the jury found the rape here involved was aggravated or not. It would appear rape of a child and aggravated rape of a child would be the "conduct" under the new Penal Code which would be the equivalent to the old Code offense of statutory rape for which the appellant was indicted.

There were no objections by the appellant as to that portion of the charge instructing the jury as to the punishment for rape of a child under V.T.C.A., Penal Code, Section 21.03, and as to the verdict forms submitted.

Appellant urges that as he was not indicted for aggravated rape and the indictment did not allege the elements thereof, the

court's charge was in error and the verdict forms as to aggravation should not have been utilized.

The statutory scheme set forth in the above quoted Saving Provisions of the new Penal Code is similar to that found in the Texas Controlled Substances Act, Vernon's Ann.Civ.St., Article 4476–15, Sec. 6.01(a), (b), (c), which was applied by the unanimous court in *Jones v. State*, 502 S.W.2d 771 (Tex.Cr.App.1973) to a case involving a narcotic offense prior to the effective date of the above mentioned statute.[4]

■ It appears clear that under the "Saving Provisions" of the new Penal Code a defendant convicted of a former Penal Code offense in a trial commencing after January 1, 1974, will be punished under the new Penal Code if the defendant so elects in writing as provided by Section 6(c) of the "Saving Provisions." Since a defendant, under the circumstances discussed, remains convicted of the old Penal Code offense despite his election to be punished under the new Penal Code, *Jefferson v. State, supra,* it is obvious the Legislature merely intended to allow him to substitute, at his option, the new Penal Code penalty provisions for the same offense or "conduct" regardless of any variance in the elements between the offense in the old Penal Code and its equivalent counterpart in the new Penal Code without the necessity of additional proof to show that the defendant, having been found guilty of an old Code

---

**2.** V.T.C.A., Penal Code, Sec. 21.09, relates to "rape of a child", which is a felony of the second degree, the punishment for which is provided by V.T.C.A., Penal Code, Sec. 12.-33.

**3.** V.T.C.A., Penal Code, Sec. 21.03, relates in part to aggravated rape of child, which is a felony of the first degree, the punishment for which is fixed by V.T.C.A., Penal Code, Sec. 12.32.

**4.** In *Jones v. State*, 502 S.W.2d 771 (Tex.Cr. App.1973), this court held that a defendant indicted for possession of marihuana prior to the effective date of the Controlled Substances Act but who elected to proceed under that Act for punishment could not be convicted of a felony where the amount of marihuana involved was less than four

ounces. See Sec. 4.05 of Article 4476–15, supra. The trial court found from the uncontroverted evidence that the amount involved was less than two ounces, so the offense actually became a Class B misdemeanor. In *Jones* the difference between the provisions of the Controlled Substances Act and the provisions of Article 13 of the 1925 Penal Code were observed, noting that Article 13 automatically required the punishment to be ameliorated under "the second law" where the offense occurred while one statute and the trial occurred after the penalty for the offense had been reduced unless the defendant elects to receive the higher penalty under "the first law".

offense, is also guilty of the new Code offense or "conduct" which may require in and of itself proof of additional elements. As we view it, the Legislature merely intended to give to the defendant upon conviction for an old Code offense a chance to opt for the range of penalties in the new Penal Code, which in many cases included a lower range of penalties.

Further, we conclude that it was clearly not the intent of the Legislature by virtue of the "Saving Provisions" to give the defendant in a criminal case the right, in some cases, to wait until the penalty stage of a bifurcated trial and then cast additional problems of pleadings upon the State by his election to be punished under the new Penal Code. In other words, a defendant indicted for an old Code offense cannot wait until his trial after the effective date of the new Code and then file his written election to be punished under the new Code and claim that certain otherwise applicable penalty provisions of the new Code are inapplicable as punishment because the indictment properly drafted under the old Code did not also contain certain allegations now required under the new Code.

All of this is so because by examining the language of Section 6(b) of the "Saving Provisions" of the new Penal Code it becomes apparent that Section 6(c) thereof was intended to apply to all cases where the "conduct" constituting an old Code offense was carried forward into a new Code offense. As can be seen, Section 6(b) prohibits prosecution after January 1, 1974, of conduct which constituted an offense under the existing law, but does not constitute an offense under the new Code. See, i. e., *Ex parte Davila, supra.* It further requires dismissal of prosecutions for such offenses at the time of the effective date of the new Code. By using the phrase "conduct constituting an offense" and "conduct that was an offense", the Legislature limited dismissal to those cases where the act or omission and accompanying mental state for which the defendant stands accused is no longer

proscribed by law. Had the word "offense" been used instead, prosecution would have to be dismissed in all cases which the old Code offense was not reenacted without variance in essential elements into a new Code offense. It seems certain that the Legislature would not have saved a great many offenses from dismissal by use of the phrase "conduct constituting an offense" unless such offenses were to have applicable punishment under the new Code.

By consideration of the rules of construction, the fact that Section 6(b) saved many prosecutions from dismissal and the mandatory and non-restrictive language of Section 6(c), it became clear that the Legislature intended to have Section 6(c)'s provisions apply to all cases where the "conduct" which constituted an offense under the old Code also constitutes an offense or offenses under the new Code. We cannot agree that the Legislature intended for Section 6(c) to apply only where the old Code offense was carried forward into the new Code without any change whatsoever. As noted earlier, practically every offense carried forward has been altered in language and many consist of different elements, and some have been divided into separate offenses. We cannot conclude that the Legislature intended that the provisions of Section 6(c) be so limited as to render it almost meaningless. And we do not understand appellant in the instant case to so contend.

Where the equivalent and only counterpart of the old Code offense for which the defendant has been convicted is found in a new Penal Code offense or "conduct", no real problem of substitution of range of punishment exists. If the judge is to assess punishment, he merely uses the range of penalties under the only and equivalent counterpart in the new Code. If a jury is to assess the punishment, the judge submits to the jury that range of punishment under the new Penal Code.

If several sections of the new Penal Code cover the type of offense or "conduct" under the old Penal Code for which the de-

fendant is convicted, then the applicable section of the new Code must be determined from the proof if the defendant makes the written election as provided by Section 6(c) to be punished under the new Code. If the trial judge is to determine punishment, no real problem is presented. If a jury is to pass upon punishment, then the trial judge must determine from the proof which section or sections of the new Penal Code are applicable, and to submit the case to the jury under the appropriate sections of the new Penal Code.

This is exactly what the trial judge did in the instant case and we find no merit in appellant's objections to the charge or the use of verdict forms at the penalty stage of the trial.

Lastly appellant contends the evidence was insufficient to support the verdict of the jury that the rape was aggravated under the provisions of V.T.C.A., Penal Code, Section 21.03.

The record reflects that on May 10, 1973, the prosecutrix, C———— A———— R———— "skipped" school and met two girl friends, Linda Westbrook and Carrie Herbert Ray at the Dairy Queen in Belton. There the girls met Darrell Wright,[5] and agreed to go to his house and sand his car. After working on the car, the appellant purchased some wine and they went to a lake where Linda passed out from drinking wine. Subsequently, Linda was taken home and Carrie got out of the car at the courthouse. The prosecutrix, who was driving, offered to drive to Salado and show the appellant where her boyfriend lived and where they had a wreck. When they were on the gravel road where the wreck occurred, the appellant told the prosecutrix to stop and back up. When she did, he grabbed the keys and threw them on the dash, and when the prosecutrix tried to get out of the car, he grabbed her and got her down in the seat. She succeeded in getting out the other door, but appellant again grabbed her, this time around the neck, applying pres-

sure, and told her "not to run off" because he would break her neck. He slapped her in the face several times and when she started screaming, he put his hand over her mouth and nose and told her to "shut up" or that she "would never make it back to town". After he got her back in the car, he hit and slapped her and then raped her while she was fighting. A car passed while the act was taking place and the prosecutrix hollered and screamed for help, but the passing car did not stop. The appellant then made her drive the car fifty or sixty feet down the road and then he had another act of intercourse with her. They then drove to a Texaco service station in Salado, where the appellant left the prosecutrix, who called her boyfriend. Dr. Ralph Wallace, Jr., who examined the prosecutrix after the alleged offense found that she had multiple bruises over her body, "some on her neck, arms, I think on her back and under the back of one knee."

We conclude that the evidence is sufficient for aggravated rape of a child, as it shows the prosecutrix was compelled to submit by threat of death. See V.T.C.A., Penal Code, Section 21.03. See *Ambers v. State,* 527 S.W.2d 855 (Tex.Cr.App.—delivered this date).

Finding no reversible error, the judgment is affirmed.

ROBERTS, Judge (concurring).

I concur only in the result reached by the Court in this case, but my reasoning differs somewhat from that embodied in the other opinions.

At the outset, I believe the broad interpretation given to the Saving Provisions by Presiding Judge Onion in his concurring opinion is the correct view. The Legislature obviously intended to give defendants found guilty of a crime under the old Code an opportunity to avail themselves of the more lenient sentencing provisions of the new Code. This interpretation is consistent with that of the Saving Provisions of the

5. The age of appellant is not reflected, but he was convicted in 1962 of felony offenses.

new Controlled Substances Act, (Acts 1973, 63rd Leg., Ch. 429). *Jones v. State*, 502 S.W.2d 771 (Tex.Cr.App.1973).

In *Jefferson v. State*, 519 S.W.2d 649 (Tex.Cr.App.1975), this Court approved the imposition of sentence for aggravated robbery under Sec. 29.03, V.A.T.S., Penal Code after a conviction for robbery by firearms under Art. 1408 of the old Code, even though the elements of the two offenses were different. And in *Bishoff v. State*, Tex.Cr.App., (No. 49,516 delivered March 12, 1975) (rehearing pending), this Court approved the imposition of sentence for conduct constituting an offense under Sec. 21.06 of the new Code ("Homosexual Conduct") after conviction for the offense of sodomy under Art. 523 of the old Code. This was done even though the new Code proscribed deviate sexual intercourse with another of the same sex while the old Code did not require, nor did the indictment allege, nor did the verdict find that the defendant and the complainant were of the same sex. Despite the variance in the elements of the offenses discussed above, sentencing under the new Code was permitted.

If exact identity of elements of the old and new Code offenses were required, Sec. 6(c) of the new Code would have a very limited application which I do not think the Legislature intended. I therefore find myself in agreement with Presiding Judge Onion that Sec. 6(c) permits sentencing under the new Code for conduct which constituted an offense under the old Code.

I cannot agree with his suggestion, however, that review of such questions should be on an abuse of discretion basis. Nor can I countenance an interpretation of Art. 37.-07, V.A.C.C.P. which would permit the trial judge, or require him upon objection, to hear evidence at the punishment stage of a trial on which new Code offense would contain the "more applicable" sentencing provisions. Art. 37.07(3), V.A.C.C.P., is precise in limiting evidence at the punishment stage to the defendant's prior criminal record, his general reputation, and his character. Contrast the broad provision of Art. 37.071(a).

As a matter of policy, I also feel that punishment hearings should not be complicated with aimless searches for "more applicable" offenses. The Legislature did not intend to create nor is anyone anxious to see the advent of trifurcated trials.

I would permit the trial judge to submit the range of punishments for all new Code offenses raised by the evidence and properly requested by the defendant, as the careful trial judge did in this case. The question on review should be as on a question of law, not for abuse of discretion. The range of new Code punishments submitted to the jury after conviction for an old Code offense should be only for offenses containing elements proven at the guilt stage of the trial and raised by the evidence. A new Code offense would not be raised if the evidence negated it by containing uncontroverted proof of an element distinguishing it from the old Code offense. If the defendant should request punishment for an offense containing elements that were not proven up at the first stage, refusal of that request would be proper. If, however, he were to request punishment for a new Code offense the elements of which were established at the guilt stage and the evidence of which was not otherwise negated by uncontroverted evidence, his request should be granted. In the case at bar, appellant was convicted of statutory rape under the old Code, but the proof showed that he employed force and threats of violence and that the prosecutrix was fifteen. The elements of the new Code offenses of aggravated rape and rape of a child were thus shown and the possibility that appellant was guilty of those offenses was not negated by uncontroverted evidence elsewhere in the record. It follows that the trial judge did not err in submitting to the jury the ranges of punishment for these offenses at the second stage of the trial.

ODOM, Judge (concurring in part and dissenting in part).

I concur in part of the majority's interpretation of the Saving Provisions of the

new Penal Code (Acts 1973, 63rd Leg., ch. 399, Section 6), but also dissent to much of that interpretation and to the procedure which the majority hold should be followed for determination of punishment upon a defendant's election to be punished under the new Penal Code, under Section 6(c).

The variety of relevant factors which come into play in determining the appropriate range or ranges of punishment is great, and neither can nor should be stated in detailed elaboration in a single opinion of this Court. Nevertheless, the primary factors and an instructive outline of their relative roles can and should be made. Following the statement of the point on which I concur in the majority's interpretation of Section 6(c) (part I), and an analysis of the points upon which I dissent to that interpretation (parts II–IX), I attempt to make such an outline of the proper procedure for the punishment stage of a Section 6(c) case (parts X–XVI), and then demonstrate its application to the instant case (part XVII).

First, however, I wish to state the issue now before this Court, interpreting Section 6(c) of Acts 1973, 63rd Leg., ch. 399, is of limited application and will affect only a small number of cases. Initially, only those cases tried after January 1, 1974, for offenses committed prior to that date are affected. Less immediately, such cases as are tried under some other saving provision with the same language are likely to be affected by today's decision. See, e. g., Acts 1975, 64th Leg., ch. 341, Sec. 7(c) and ch. 342, Sec. 17(c).

### I.

Section 6(c) of the Saving Provisions permits a defendant prosecuted after January 1, 1974, for an offense committed before that date to elect to be punished under the new Code. The majority hold this provision "was intended to apply to all cases where the 'conduct' constituting an old Code offense was carried forward into a new Code offense." Under this holding every defendant whose prosecution is not dismissed under Section 6(b) may elect, upon conviction after January 1, 1974, for an offense committed before that date, to be punished under the new Act. I concur that this holding correctly states the legislative intent with respect to the *scope* of Section 6(c). The language of Section 6(c) states unconditionally that in an old code prosecution after January 1, 1974, not dismissed under Section 6(b), "the defendant, if adjudged guilty, shall be assessed punishment under this Act if he so elects by written motion filed with the trial court before the sentencing hearing begins." This all-inclusive language belies any intent to limit the scope of Section 6(c). The Legislature bestowed the right of election of punishment upon the defendant in each case not dismissed under Section 6(b).

### II.

While I concur in the majority's holding with respect to the *scope* of Section 6(c), I challenge the judicially decreed procedures for effectuation of a defendant's election to be punished under the new Act. Although the Legislature granted the right of election to all within the class, the Legislature did not create a procedure for giving effect to such an election. It is pure conjecture to speak of a legislative intent regarding any special procedure for effectuating such an election, because the Legislature simply did not provide any such special procedure.

The majority assert:

". . . it is obvious *the Legislature merely intended* to allow [the defendant] to substitute, at his option, the new Penal Code penalty provisions for the same offense or 'conduct' regardless of any variance in the elements between the offense in the old Penal Code and its equivalent counterpart in the new Penal Code *without the necessity of additional proof* to show that the defendant, having been found guilty of an old Code offense, is also guilty of the new Code offense or 'conduct' which may require in and of

itself proof of additional elements." (Emphasis added.)

They also assert:

"Further, we conclude that *it was clearly not the intent of the Legislature* by virtue of the 'Saving Provisions' to give the defendant in a criminal case the right, in some cases, to wait until the penalty stage of a bifurcated trial and then cast *additional problems of pleadings* upon the State by his election to be punished under the new Penal Code." (Emphasis added.)

The majority make these assertions of legislative intent with respect to the procedure for effectuation of a punishment election, but they cite no authority or evidence of any such legislative intent. Contrary to the majority, it is my opinion that the Legislature, in enacting Section 6, expressed no intent whatsoever that any special procedure should be followed, but was quite obviously silent on the whole matter. The failure of the Legislature to provide any special procedure for Section 6(c) cases evidences an intent that the usual procedures, so far as possible, should be followed. The procedure should be, as nearly as possible, the same as in any other case. General principles of law should be followed and the constitutional rights of the defendant should be accorded due respect and protection. The majority's proposal (see part III) does not conform to those established procedures (see parts IV–VI), and in that respect violates the Legislature's intent as evidenced by its silence on the matter. Neither does their proposal accord due protection of the constitutional rights of the defendant (see parts VII–IX).

### III.

The majority set out the following procedure ·as the correct one for trial courts to follow upon a defendant's election to be punished under the new Penal Code:

"Where the equivalent and only counterpart of the old Code offense for which the defendant has been convicted is found in a new Penal Code offense or 'conduct', no real problem of substitution of range of punishment exists. If the judge is to assess punishment, he merely uses the range of penalties under the only and equivalent counterpart in the new Code. If a jury is to assess the punishment, the judge submits the jury that range of punishment under the new Penal Code.

"If several sections of the new Penal Code cover the type of offenses or 'conduct' under the old Penal Code for which the defendant is convicted, then the applicable section of the new Code must be determined from the proof if the defendant makes the written election as provided by Section 6(c) to be punished under the new Code. If the trial judge is to determine punishment, no real problem is presented. If a jury is to pass upon punishment, then the trial judge must determine from the proof which section or sections of the new Penal Code are applicable, and to submit the case to the jury under the appropriate sections of the new Penal Code."

The proposal of the majority is that the trial judge first look to the statutes and compare old code statutes with new Code statutes to determine whether the old code statute has only one "equivalent" or "counterpart" provision in the new Penal Code, or if, instead, "several sections of the new Penal Code cover the type of offense or 'conduct' under the old Penal Code" statute upon which the prosecution was predicated. If the latter is the case, the majority direct that a second step be taken, at which the trial court must "determine from the proof which section or sections of the new Penal Code are applicable." Following the one or two steps, as the case may be, the trial judge, if punishment is to be assessed by jury, then submits the range or ranges of punishment in its charge.

I find flaws in both the first step and the second step which require my dissent.

## IV.

As stated above, the majority direct the trial court first to compare new Code statutes with the old code statute upon which the prosecution was based to determine which statute or statutes of the new Code dictate the applicable punishment range or ranges. The majority do not state why the old code *statute* is the standard for comparison, and it is my opinion that it should not be. Instead, the trial court should determine which new Code statute or statutes are applicable by examining the facts found by the jury to be true beyond a reasonable doubt, as evidenced by their verdict of guilty and the indictment upon which the verdict rests. The following analysis demonstrates why this is true.

A defendant is convicted for a particular offense. "Offense," in this respect, has a dual meaning. The statute defines the offense, and in referring to the statute violated the defendant is said to be convicted of the offense, "offense" being generic. A convicted defendant is also said to be convicted for the offense, referring to the specific acts committed by him, and in this meaning "offense" is not being used in the generic, but in reference to the specific events described in the indictment and found by the jury, beyond a reasonable doubt, to have occurred as so described. The indictment, as the charging instrument, connects these two. It alleges the specific conduct and describes it in such a manner that the specific acts alleged are comprehended within the generic class. That is, the indictment alleges the commission of acts in violation of a statute.

The question of whether the facts alleged constitute an accusation of the commission of an offense is a question of law for the courts. The question is answered by comparing the language of the indictment with the language of the statute. The question is whether the facts alleged are true is a question of fact for the jury, if trial is by jury, and must be proven beyond a reasonable doubt. Before an accused is convicted, both questions must be answered in the affirmative. Upon such a determination, the defendant is said to be guilty of the offense. But he is not guilty of the offense generally; he is guilty of the offense as charged in the indictment (or of some lesser included offense as submitted in the charge).

The assessment of punishment is predicated upon a finding of guilt. The range of punishment submitted to the jury, or the single punishment affixed by law, is determined upon the facts as determined by the jury upon proof beyond a reasonable doubt. The indictment is the connecting link between the facts found by the jury and the punishment range affixed by statute. That punishment range affixed by statute to the facts found by the jury to be true is the punishment range which the defendant is entitled to have submitted to the jury. The determination of what range of punishment is appropriate for submission to the jury therefore rests upon what facts have been found by the jury.

The statute upon which a prosecution is based is of relevance to a determination of the range of punishment only insofar as it affixes a range of punishment to a described statutory offense encompassing the set of facts found by the jury. This being true, once the defendant has elected to be punished under the new Penal Code, the old code statute has no further primary role in the determination of the appropriate range of punishment. Just as in the ordinary case the facts found by the jury are laid beside the statutes to determine what range of punishment the Legislature has affixed to the conduct found by the jury to have been committed, so in a Section 6(c) case the facts found by the jury should be laid beside the statutes to determine what new range of punishment has been affixed to the conduct found by the jury to have been committed. The only difference is that in a Section 6(c) case the set of statutes against which the facts found by the jury are measured is the set of new Penal Code statutes. The old Penal Code statutes play no role in

this stage of the process of determining the new appropriate range of punishment.

The majority are therefore in error in the scheme they have advanced. It is for this reason, in the first instance, that I dissent.

## V.

As was pointed out in the above discussion (part III), the majority hold that in a case where several new Penal Code sections are found to "cover the type of offense" of which the defendant has been convicted, "the trial judge must determine from the proof which section or sections of the new Penal Code are applicable." The majority, in stating this test, have intermingled two determinations. First is the question of which new Code statutes *may* be applicable; second is which range of punishment must ultimately limit the jury's assessment of punishment. The first issue is one of law, determined in part[1] by comparison of the verdict and indictment with the new Code offenses as demonstrated in IV, above. The second issue is one of fact in any case where the answer to the first issue is that more than one range of punishment may apply. As an issue of fact bearing upon punishment, it must be determined by the jury in any case where the jury is assessing punishment, and not by the trial judge as held by the majority.[2] Not only must it be determined by a jury, it must also be proven beyond a reasonable doubt.[3] In this respect, the conclusions, first, that the court must determine which several ranges may apply under the law applied to the facts as already found by the jury, and, second, that the jury must find further facts beyond a reasonable doubt upon which findings they are directed by the punishment charge to the ultimately controlling, single range of punishment, are in conformity with the laws governing other criminal trials, afford the defendant due process of law, and protect the constitutional rights of the accused.

The proposal of the majority, that the judge examine the "proof" or evidence previously introduced without regard to the findings previously made by the jury and determine by himself which "section or sections of the new Penal Code are applicable," on the other hand, has no precedent in the law governing criminal cases, deprives the defendant of due process by removing the determination of crucial factual issues from the jury and from effective appellate review, and deprives him of the constitutional right to demand proof beyond a reasonable doubt.

It is often the case that further facts than those necessary to establish guilt must be ascertained before the range of punishment may be established. In such cases the court must submit the determination of those facts to the jury in a charge presenting the ranges of punishment in the alternative, as is done in cases with enhancement allegations. In a prosecution for murder which submits only the issue of guilt or innocence at the first stage of the trial, it is proper for the court to instruct the jury at the second stage in the alternative on the ranges of punishment for murder with malice and murder without malice. It is *not* proper for the court to determine the issue of malice itself and upon that determination submit only one range of punishment. Why should the rule be any different when the court is unable to determine from the findings of the jury at the guilt stage of the trial, which of more than one applicable new Code punishment range should limit the jury's final assessment of punishment? The majority advance no reason for deviating from the standard rule applicable in other cases. The same constitutional rights of the accused which demand adherence to that rule in other cases, and which are the foundation for the existence of that rule, also dictate that it be applied to Section 6(c) cases.

---

1. The determination of which statutes *may* be applicable may also be limited by the protection against double jeopardy. See part XV.

2. See footnote 7, below.

3. See parts VIII and XIV.

When there are elements in the new Code statute or statutes under which punishment is submitted which are not part of the facts previously found by the jury, their proof must be charged to the jury and found true before the new Code statute operates to affix a range of punishment. The scheme advanced by the majority is therefore in error for failure to submit to the jury fact issues that determine which range of punishment applies. It is for this reason, in the second instance, that I dissent.

### VI.

To summarize, there are two basic flaws in the procedure outlined by the majority for effectuation of a defendant's election under Section 6(c) to be punished under the new Penal Code.

First, the majority hold the trial judge should compare the new Code statutes with the old Code statute under which the defendant was convicted to determine which new Code provisions may affix punishment ranges to the offense. Instead, the new Code statutes should be compared with the facts found by the jury beyond a reasonable doubt at the guilt stage, as evidenced by the verdict and indictment, to ascertain which provisions may apply, as is done in all other criminal cases.

Second, the majority hold that when more than one new Code provision may apply, the trial court should look to the evidence to determine which range or ranges of punishment should be submitted to the jury. Instead, the issues of fact upon which rest the determination of which range of punishment is ultimately controlling should be submitted to the jury in an alternative charge, as is done in all other criminal cases where such an issue arises.

Each of these characteristics of the majority's procedure constitutes a radical departure from the usual procedure in criminal cases, and is accomplished by the action of the majority of this Court with neither constitutional nor legislative mandate. It appears that the proposed procedure was conceived to give effect to a supposed legislative intent that is without foundation. In part II, above, it was pointed out that the Legislature, in granting defendants the right to elect punishment under the new Code, did not enact any special procedure for effectuating such an election. The majority, nevertheless, hypothesized a legislative intent with respect to any such procedure, as stated in the selections from their opinion quoted in II, above, to-wit: the Legislature intended that any such procedure should impose no additional burdens of pleading or proof beyond that necessary for conviction of the old code offense. To give effect to this supposed intent, the majority have removed the pleadings and requirements of proof from their established roles in the punishment stage of the criminal trial. By doing so the majority have not only prevented the imposition of any additional burdens of pleading and proof upon the State, but have in fact removed such burdens as heretofore have been demanded of the State at the punishment stage of the trial. Do the majority also assert a legislative intent to abolish such established procedural requirements?

### VII.

Apart from my dissent to the majority's interpretation and application of Section 6(c) based upon legislative intent and violation of established procedures, I have serious doubts regarding the constitutionality of their interpretation and application of that provision. These constitutional shortcomings, as I perceive them, are also a consequence of the majority's incorrect assessment of the legislative intent as previously stated, to-wit: that any procedure for effectuating an election under Section 6(c) should impose no additional burdens of pleading or proof beyond that necessary for conviction of the old code offense. (See parts II and VI.)

The requirements of pleading and proof are cast upon the prosecution by the Constitution of Texas and the United States Con-

stitution, not by the defendant. It is the Constitution, and not the defendant, that necessarily places upon the State such additional burdens of pleading and proof as do arise in Section 6(c) cases. The Legislature expressed no intent to abolish such protective requirements, as contended by the majority, nor could any such intent be given effect to abolish those constitutional safeguards.

Neither can a Section 6(c) election reasonably be said to be a carte blanche knowing and intelligent waiver of all constitutional rights which it might be more convenient to bypass than to honor in the punishment determination. It would be proper to hold that a defendant's Section 6(c) election constitutes a waiver of some constitutional right only where assertion of the Section 6(c) election right is in irreconcilable conflict with assertion of the constitutional right.[4] Absent such a waiver, every defendant, regardless of whether he makes a Section 6(c) election or not, is entitled to the constitutional protections afforded by the requirements of pleading and proof beyond a reasonable doubt.

## VIII.

In any case where facts other than those found by the jury at the guilt stage must be ascertained before punishment may be assessed,[5] the Constitution requires that the State prove those additional facts beyond a reasonable doubt. The majority have not provided for protection of this constitutional right.[6]

The Supreme Court in *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368, held:

"Lest there remain any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the

accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."

The fact that the issues here under discussion relate only to the determination of what range of punishment shall be considered by the jury does not remove them from the rule that the requisite facts for the assessment of punishment must be proven beyond a reasonable doubt. In the recent case of *Mullaney v. Wilbur,* ——U.S. ——, 95 S.Ct. 1881, 44 L.Ed.2d 508, the Supreme Court considered the applicability of the reasonable doubt standard of proof to the issue of "heat of passion" in homicide prosecutions under the law of Maine. The Court held:

"Petitioners, the warden of the Maine Prison and the State of Maine, argue that . . . *Winship* should not be extended to the present case. They note that as a formal matter the absence of the heat of passion on sudden provocation is not a 'fact necessary to constitute the *crime*' of felonious homicide in Maine. *In re Winship,* 397 U.S. at 364, 90 S.Ct. [1068,] at 1073 [25 L.Ed.2d 368] (emphasis supplied). This distinction is relevant, according to petitioners, because in *Winship* the facts at issue were essential to establish criminality in the first instance whereas the fact in question here does not come into play until the jury already has determined that the defendant is guilty and may be punished at least for manslaughter. In this situation, petitioners maintain, the defendant's critical interests in liberty and reputation are no longer of paramount concern since, irrespective of the presence or absence of the heat of passion on sudden provocation, he is likely to lose his liberty and certain to be stigmatized. In short, petitioners would

---

4. See part XIII, below.

5. See part V, above, and part XI, below.

6. I do not understand the majority's failure to provide protection of this valuable right, particularly in light of the lengthy dissent by

the author of the majority opinion filed in *Kelly v. State,* Tex.Cr.App., 483 S.W.2d 467, 473–481, in which much language may be found describing the origins and reasons for requiring such a high standard of proof.

limit *Winship* to those facts which, if not proved, would wholly exonerate the defendant.

"This analysis fails to recognize that the criminal law of Maine, like that of other jurisdictions, is concerned not only with guilt or innocence in the abstract but also with the degree of criminal culpability. Maine has chosen to distinguish those who kill in the heat of passion from those who kill in the absence of this factor. Because the former are less 'blame-worth[y],' *State v. Lafferty*, Del., 309 A.2d [647,] at 671, 673 (concurring opinion), they are subject to substantially less severe penalties. By drawing this distinction, while refusing to require the prosecution to establish beyond a reasonable doubt the fact upon which it turns, Maine denigrates the interests found critical in *Winship.*

"The safeguards of due process are not rendered unavailing simply because a determination may already have been reached that would stigmatize the defendant and that might lead to a significant impairment of personal liberty."

In giving effect to a defendant's election to be punished under the new Penal Code, the determination of which of several penalty ranges may apply, upon the basis of finding additional facts which will establish which new Code provision affixes a range of punishment to the conduct committed, must be upon the basis of finding such controlling facts upon proof beyond a reasonable doubt. The scheme advanced by

the majority fails to provide for protection of this established constitutional right.[7] It is for this reason, in the third instance, that I dissent.

### IX.

In certain cases, the facts alleged in the indictment, and found by the jury true beyond a reasonable doubt, will constitute an offense not only under the old code statute, but also under a comparable provision of the new Penal Code. In such a situation, it may accurately be said that the new Code provision affixes a range of punishment to the offense for which the accused was found guilty. (Cf. part IV, above.) When this is so, no further facts need be found than those determined at the guilt stage, in order to ascertain which range of punishment is appropriate for submission to the jury upon a Section 6(c) election, and the defendant is entitled to submission of that range of punishment affixed by the new Code provision to the facts alleged in the indictment and proven beyond a reasonable doubt.

The State is certainly to be held to be on notice of the Saving Provisions' authorization to the accused to be punished under the new Penal Code in cases where it affixes a punishment to the offense charged.

It has been held consistently that when the State relies upon facts not in the bare description of the offense to secure penalties other than those affixed by statute to the offense alleged in the indictment, those

7. The majority state that when several new Penal Code sections prohibit conduct of the same type as the old Penal Code offense for which a defendant is convicted, the judge may determine which section is appropriate, and submit the range of punishment under that section to the jury. Consider this situation: Under Article 524, V.A.P.C. (1925), the penalty for sodomy was two to fifteen years. Under the new Penal Code, Sec. 21.06 makes homosexual conduct punishable as a Class C misdemeanor; Sec. 21.07 makes public lewdness punishable as a Class A misdemeanor; Sec. 21.04 makes sexual abuse punishable as a second degree felony; Sec. 21.05 makes aggravated sexual abuse

punishable as a first degree felony. A defendant convicted of sodomy under the old Penal Code in a trial after January 1, 1974, upon election to be punished under the provisions of the new Penal Code may expect, under the holding of the majority, to be punished for the lowest misdemeanor or the highest non-capital felony, depending solely on what the judge may determine is appropriate, subject only to review of whether there is any evidence to support that determination. The majority require neither submission of the fact issues to the jury (see part V, above), nor proof of the determining facts beyond a reasonable doubt.

other facts must themselves be alleged in the indictment. See *Dunn v. State,* 128 Tex.Cr.R. 229, 81 S.W.2d 87. This has been held true where the State seeks enhancement on the basis of prior misdemeanors under Article 61, V.A.P.C. (see *Colvin v. State,* 172 Tex.Cr.R. 310, 357 S.W.2d 390); or on the basis of a prior non-capital felony under Article 62, V.A.P.C. (see *Schmeideberg v. State,* Tex.Cr.App., 415 S.W.2d 425); or on the basis of two prior noncapital felonies under Article 63, V.A.P.C. (see *Simmons v. State,* Tex.Cr.App., 493 S.W.2d 937, 940; *Alvarez v. State,* Tex.Cr.App., 472 S.W.2d 762; *Rogers v. State,* 168 Tex.Cr.R. 306, 325 S.W.2d 697); or on the basis of a prior capital felony under Article 64, V.A.P.C. (see *Whittle v. State,* 179 S.W.2d 569). It also has been held that if enhancement is sought under the Narcotic Drug Act, Article 725b, Sec. 23, V.A.P.C., the indictment must inform the accused of the basis of the State's claim for enhancement of punishment. See *Aranda v. State,* Tex.Cr.App., 506 S.W.2d 221, 224; *Gomez v. State,* 126 Tex.Cr.R. 30, 280 S.W.2d 278. It also was held with regard to the shoplifting statute, Article 1436e, V.A.P.C., in *Sullivan v. State,* 172 Tex.Cr.R. 156, 354 S.W.2d 168: "While it is true that *the statute does not mention the state's pleadings* in providing for increased·punishment or a felony, *it is essential that such conviction be properly alleged* if the state seeks to enhance the punishment or create an offense based on a prior conviction." (Emphasis added.) Also, in a prosecution for murder the presence or absence of malice relates only to punishment (*Foster v. State,* Tex.Cr.App., 493 S.W.2d 812), and "any punishment in excess of five years [for murder] is illegal unless the indictment alleges that the killing was done with malice aforethought, said element being indispensable for a greater penalty." *Lee v. State,* Tex.Cr.App., 503 S.W.2d 244.

These pleading requirements flow from the constitutional right of the accused to know the nature and cause of the accusation against him. Article I, Section 10, Texas Constitution; *Sullivan v. State, supra.*

When the State, instead of seeking a new indictment (1) that would give notice of any aggravating facts upon which reliance would be placed for greater punishment, and (2) upon which a verdict of guilty as charged in the indictment would constitute a finding beyond a reasonable doubt that the aggravating facts charged were true, elects to proceed upon the indictment charging facts constituting an offense under some comparable provision of the new Penal Code, the State should be bound by its pleading, and not permitted to rely upon facts not alleged in the indictment to secure submission of a greater range of punishment than that affixed by the new Code offense alleged in the indictment relied upon.

The majority, instead of restricting the State to its pleadings in those cases where the indictment and verdict rendered thereon are a sufficient predicate under the new Penal Code for assessment of punishment on the guilty verdict, hold that the Section 6(c) election releases the State from the constitutional requirements of pleading, and authorizes submission of punishment upon any new Code theory of aggravation supported by some evidence. Under such a holding, the indictment and requirements of pleading become irrelevant to the punishment proceeding.

It is for this reason, in the fourth instance, that I dissent.

### X.

In the above discussion I have set out the grounds for my dissent and the reasons why the procedure adopted by the majority is inadequate. I will now endeavor to outline a procedure which is adequate and explain why it is correct.

The starting point for determining the appropriate procedure is an examination of the language of the Saving Provisions and the legislative intent. As explained above, the Legislature intended that every defend-

ant tried after January 1, 1974, for an offense committed before that date has the right, under Section 6(c), to elect to be assessed punishment under the new Penal Code (see part I). With regard to the procedure that a trial court should observe following such an election, however, the Legislature made no special provisions. The Legislature's silence on this question should be taken as indicative of an intent that the usual procedures and requirements governing the punishment hearing in any other case, so far as possible, should govern in a Section 6(c) punishment proceeding (see part II). In determining what procedural steps should be followed, due respect and protection also must be accorded the constitutional rights of the defendant. It would be unreasonable to assume that a defendant upon making a Section 6(c) election also intends to make a knowing and intelligent waiver of all constitutional protections (see part VII). It would be proper to hold that such an election constitutes a waiver of a constitutional right only where it is obvious that the right waived is in irreconcilable conflict with the assertion of the Section 6(c) right to elect punishment under the new Penal Code (see part XIII). These, then, are the conditions that the Section 6(c) punishment hearing procedures must satisfy: (1) the same procedures that govern other cases shall apply, except that (2) when application of those procedures to a Section 6(c) case operate to deprive a defendant of a constitutional right, the procedure must be altered to the minimum degree possible to accord protection of that right, provided, however, that (3) when the assertion of the constitutional right is in irreconcilable conflict with assertion of the Section 6(c) right, the assertion of the latter waives the protections of the former.

For ease of explanation and greatest clarity, this analysis will take as its model a case where trial at both stages is by jury. The procedure at the punishment stage of the usual case is clear. A verdict of guilty has been returned, either for the offense charged in the indictment or for a lesser included offense. The indictment may or may not have alleged facts other than those submitted at the guilt stage of the trial, relevant only on the issue of punishment. Thus, the trial judge will be confronted with one of four situations: (1) a verdict of guilty as charged in the indictment, with no further facts bearing on punishment alleged in the indictment; (2) a verdict of guilty for a lesser included offense, with no further facts bearing on punishment alleged in the indictment; (3) a verdict of guilty as charged in the indictment, with additional facts bearing on punishment alleged in the indictment; or (4) a verdict of guilty for a lesser included offense, with additional facts bearing on punishment alleged in the indictment.

In the first situation, the trial judge should examine the facts found by the jury beyond a reasonable doubt, as evidenced by the verdict and indictment, and submit the range of punishment affixed by the statute defining the statutory offense encompassing and prohibiting the conduct described by those facts (see part IV, paragraph 4). To look to other facts not found by the jury to have been proven beyond a reasonable doubt would violate the defendant's right to require the State to sustain its burden of proof beyond a reasonable doubt (cf. part VIII; see part XIV). To look to facts not alleged in the indictment would violate the defendant's right to notice and to put the State to its burden of pleading (cf. part IX; see part XIII).

In the second situation, the trial judge should examine the facts found by the jury beyond a reasonable doubt, as evidenced by the verdict and *that portion of the indictment* upon which the verdict of guilty of the lesser included offense was predicated, and submit the range of punishment affixed by the statute defining the statutory offense encompassing and prohibiting the conduct described by the facts so found by the jury (see part IV, paragraph 4). Once again, to look elsewhere or to direct the jury to look elsewhere in determining the range of punishment would violate the de-

fendant's constitutional rights as above stated. Also, to inject into the determination of the proper range of punishment, either by consideration by the judge or instruction to the jury, some fact issue already determined adversely to the State by the jury's implied acquittal of the greater charged offense would violate the defendant's constitutional protection against double jeopardy (see part XV).

In the third situation, the trial judge will be required to submit alternative ranges of punishment to the jury along with further fact issues, requiring proof beyond a reasonable doubt, upon the answers to which the jury will be directed to the single, ultimately controlling range of punishment. The fact issues which may be submitted will be determined by the allegations in the indictment. One of the ranges of punishment will be determined, as in the first situation discussed above, by examining the facts found by the jury at the guilt stage. Any other ranges of punishment to be submitted in the alternative will be found by hypothesizing findings adverse to the defendant on the fact issues to be submitted at this stage, and ascertaining the range or ranges affixed by the statute or statutes making the conduct or conditions described by those hypothesized facts an object of the criminal law. Again, as in the previous two situations discussed, for the trial judge to look elsewhere than stated or to direct the jury to look elsewhere for the purpose of ascertaining the controlling range of punishment would be improper and a violation of the constitutional rights of the defendant. It would also be improper for the trial judge to determine any controverted issue in the punishment allegations of the indictment and upon such determination submit only one range of punishment (see part V, paragraph 2).

In the fourth situation the trial judge may also be required to submit alternative ranges of punishment. First he must examine the facts already found by the jury and the allegations of the indictment that were reserved for the punishment stage, to determine whether the law provides any special punishment range for facts joining those already found with those alleged but not yet submitted, and also to determine whether any of the facts found adverse to the State, evidenced by the implied acquittal of the greater offense, are incompatible with the allegations not yet submitted. If the former is not the case, there is no alternative range of punishment affixed by law, and the allegations need not be submitted to the jury. If the latter is the case, it would violate double jeopardy (see part XV) to submit those issues which, by their prior verdict, the jury impliedly has found adverse to the State. Only if (1) the law does provide a special punishment range for a situation joining the lesser included offense already found with the punishment allegations and (2) the acquittal of the greater offense does not by implication preclude a finding that the punishment allegations are true, will the trial judge be authorized to submit alternative ranges of punishment. In such event, those alternative ranges will be submitted along with further issues of fact in the manner described for the third situation. As in the previous situations described, it would be improper for the trial judge to look elsewhere than described, or direct the jury to look elsewhere, or to make a determination reserved to the jury, in the execution of the procedure here described.

The above described processes state in simplified form the basic procedure followed in the ordinary case for determination of what range or ranges of punishment should be submitted to the jury. The basic procedure in each typical situation starts with examination of the guilty verdict, the indictment, and the statutes prohibiting conduct and affixing ranges of punishment to a violation of that prohibition. This procedure, so far as possible, should also be followed in Section 6(c) cases.

XI.

In applying the first step of the usual procedure in a Section 6(c) case, the trial

judge should ascertain whether the facts found by the jury at the guilt stage constitute an offense under a comparable provision of the new Penal Code. If there is such a provision then the judge should proceed, as in the usual case, to submit the range of punishment affixed by that provision.[8] If the indictment in such case also alleges further facts not submitted at the guilt stage but bearing on punishment (e. g. a prior conviction), the judge should ascertain whether there is a provision of the new Code under which a finding that such allegations are true would affix a different range of punishment. If there is such a provision, then that range of punishment should be submitted in the alternative, along with the issue of fact and instructions on which range will ultimately limit the jury's assessment of punishment, contingent upon the jury's determination of the fact issue.

If, in applying the first step, the trial judge determines that no new Code offense is shown by the facts found at the guilt stage, then it is obvious that before a range of punishment may be said to be affixed by the new Code to the conduct constituting the offense, further facts must be found. Several new Code provisions *may* affix ranges of punishment, but the determination of which range must control cannot be made before further facts, neither alleged in the indictment[9] nor, as yet, established beyond a reasonable doubt,[10] are established. In such a situation the trial court must determine which comparable provisions may be applied[11], and therefrom which ranges of punishment may apply, and submit them in the alternative, with appropriate instructions by which the jury, upon determining the additional fact issues submitted, will be directed to the correct range of punishment. It is this situation that requires deviation from the procedure followed in the usual case, because the varia-

tions in elements of the new Code offenses from the old code offense render the facts found by the jury in determining guilt for the old code offense insufficient to direct the trial judge to a controlling range of punishment under the new Code. Consequently, a deviation from the usual procedure is required if the defendant is to be assessed punishment under the new Code.

If, in addition, enhancement allegations are contained in the indictment, the same procedure as outlined in the first paragraph of this part should be followed to determine whether fact issues on such allegations should be submitted.

## XII.

It can be seen from the discussion in part XI that if the facts found by the jury at the guilt stage constitute an offense under a provision of the new Penal Code comparable to the old Code offense for which the defendant is convicted, there is no deviation from the procedure in the usual case. Only if the facts do not constitute such an offense must there be a deviation from the usual procedure by which the trial court must ascertain which comparable provisions should be submitted in the form of fact issues predicated on such comparable provisions. The usual procedure affords protection of the defendant's constitutional rights, but when the court is required to deviate from that procedure, the deviations and cause for deviation must be examined with care to insure that those constitutional rights are accorded due respect unless it can be said an effective waiver has been made. Those constitutional rights which now must be discussed in relation to the deviation from the usual procedure are the right to demand pleading by the State, the right to demand proof beyond a reasonable doubt, and the protection against double jeopardy.

8. See part IX.

9. See part XIII.

10. See part XIV.

11. See part XV.

## XIII.

All facts essential to a determination of the appropriate range of punishment must be alleged in the indictment (see part IX). These pleading requirements flow from the constitutional right of the accused to know the nature and cause of the accusation against him and may be referred to as the right to demand pleading by the State. Article I, Section 10, Texas Constitution; *Sullivan v. State*, supra.

When the indictment, in alleging an offense under the old Penal Code, does not allege facts constituting an offense under the new Penal Code, the verdict of a jury finding the defendant guilty as charged in the indictment does not constitute a sufficient finding of facts to enable the trial court to ascertain what range of punishment should control the jury's punishment deliberations after a Section 6(c) election. The defendant and the State alike have available at the commencement of trial the indictment, from which this circumstance of indeterminancy of a range of punishment can readily be recognized. The prosecution, regardless of the election of punishment, is for the old code offense; guilt is determined solely upon the elements of the old code offense; and the conviction, if one be had, is for the old code offense (*Jefferson v. State*, Tex.Cr.App., 519 S.W.2d 649). If upon a Section 6(c) election a new range of punishment is not attached automatically upon the basis of the guilt stage findings of fact, it is clear that *no* range of punishment may be affixed absent further findings of facts. Nonetheless the indictment is sufficient to support the verdict of guilty. This set of circumstances presents the following alternatives: either no Section 6(c) election may be made because the valid old Code conviction upon a valid old Code indictment has no corresponding new Code range of punishment affixed thereto, or, the defendant, in the face of an old Code conviction

upon a valid old Code indictment, to which no new Code punishment is affixed, upon election to be punished under the new Code waives any objection to the lack of notice in the indictment of those facts essential to a determination of what new Code range of punishment will ultimately limit the jury's assessment of punishment.

The first alternative would limit the scope of application of Section 6(c). The language of that provision, however, states unconditionally that in a saved old Code prosecution, "the defendant, if adjudged guilty, shall be assessed punishment under this Act if he so elects by written motion filed with the trial court before the sentencing hearing begins." Such all-inclusive language belies any intent to limit the scope of Section 6(c). (See part I.)

The second alternative, on the other hand, renders a Section 6(c) election an automatic waiver of the right to require the State to plead its case, whenever the pleading, although adequate to support the guilty verdict, is inadequate for determination of the controlling range of punishment. If a defendant stands on his right to demand pleading, the only alternative is to deny his election to be punished under the new Code, and assess punishment under the old Code, for which purpose the indictment is amply adequate and the right to demand pleading well satisfied. If, on the other hand, a defendant does elect to be punished under the new Code despite the failure of the indictment to charge facts to which a new Code range of punishment is affixed, and thereby give him notice of what further facts may be proved in the course of establishing what range of punishment is controlling, it can only be said that the defendant, in such a case, has waived his right to demand pleading of such facts. The irreconcilable conflict of his election to be punished under the new Code with the right to demand pleading in such a case [12]

12. If, on the other hand, the new Code does affix a range of punishment to the facts found by the jury upon the guilt stage, no such irreconcilable conflict arises, and no such waiver of this constitutional right may be inferred from an election to be punished under the provision affixing such range.

leads to the conclusion that such an election waives that constitutional right.

## XIV.

While it is true that in cases as above described irreconcilable conflict leads to the conclusion that assertion of a Section 6(c) election waives the right to demand pleading, no such conflict arises with respect to the right to demand proof beyond a reasonable doubt. The right to demand such proof is a requirement of due process, and attaches to all facts which constitute a part of the State's case, whether to establish guilt at the first stage of the trial, or to determine punishment at the second. (See part VIII.)

Not only is the right to demand proof beyond a reasonable doubt of constitutional magnitude, but steps to protect this right do not conflict with an election to be punished under the new Penal Code. The trial court, after determining which new Code ranges of punishment may be applicable, can as easily submit the controlling fact issues to the jury with instructions on the burden of proof as it can submit the controlling fact issues in any other case where submission of alternative ranges of punishment is in order. Furthermore, in any case where further fact issues must be determined before it can be said that the new Code affixes a range of punishment to the conduct described by the facts found by the jury, but there is only one possible range of punishment, it is still necessary that those facts be submitted to the jury, because it is only upon a finding that such further facts are true that it may accurately be said that the new Code affixes a range of punishment applicable to the case.

The right to demand proof beyond a reasonable doubt, then, should be accorded due protection in every Section 6(c) case. No adequate cause can be given for its neglect.

## XV.

This Court has held in *Welcome v. State*, Tex.Cr.App., 438 S.W.2d 99; *Pope v. State*, Tex.Cr.App., 509 S.W.2d 593; and *Turner v. State*, Tex.Cr.App., 518 S.W.2d 243, upon authority of *Green v. United States*, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957), and *Price v. Georgia*, 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970), that "conviction of a lesser included offense bars a prosecution for the greater offense on a new trial, even if the new trial is obtained by the defendant at his instance." *Pope v. State, supra,* at 596.

The purpose of submitting fact issues at the punishment stage in those cases requiring such submission is to try those issues not yet determined, but upon which rests determination of the controlling range of punishment. If at the guilt stage certain of such issues were submitted to the jury, and found adverse to the State (as evidenced by conviction for a lesser included offense implying acquittal of the greater offense, which acquittal rests upon such adverse determination), it would violate double jeopardy to retry those issues by resubmission at the punishment stage. This is true equally where conviction and punishment are under the old Penal Code, and where after conviction under the old Penal Code election is made for punishment under the new Penal Code. In the latter case those provisions of the new Penal Code which would require a finding of facts which have already been rejected by the acquittal of the greater offense may not be submitted at the punishment stage nor resorted to for submission of the appropriate range of punishment. To do so would violate the protection against double jeopardy.

## XVI.

The above discussion should offer sufficient guidance for determination of what procedure should be followed in any particular Section 6(c) case. From the length of the discussion and the number of factors which play a role in the various types of situations that could arise, it may appear that the scheme suggested is unduly complex and perhaps even unworkable. In fact, however, the decision-making process of the trial court in preparing a punishment

charge in a Section 6(c) case is not, in any significant degree, any more complicated than in any other case. The basic factors playing a role in either type case are the same: the facts found by the jury, evidenced by their verdict and the indictment; the set of statutes which may affix punishment to the conduct described by those facts; the constitutional rights of the defendant. All the variations in the procedures, and they are few, are the result of the fact that in a Section 6(c) case the set of statutes resorted to for determination of punishment are different from those under which the indictment was originally drawn.

The simplicity and workability of the above discussed scheme for Section 6(c) cases may be seen by examining the following diagram [13] of the decision-making process of the trial court in preparing a punishment charge:

---

13. The diagram shows questions of law that must be decided by the trial judge in preparing the punishment charge. Other factors, such as whether there is any evidence raising the issue, must, of course, also be given due consideration.

14. See part XII.

15. See part XI, paragraph 2.

16. See part XI, paragraph 1.

17. See part XV.

18. See part XIII.

19. See part XIV.

20. See part XIV.

## XVII.

The simple procedure above outlined will now be applied to the instant case.

Appellant was indicted for statutory rape under the old Penal Code, and found guilty of "rape as alleged in the indictment." Because of legislative changes in the comparable new Code offense which vary from the facts alleged by the indictment and found by the jury, the first question before the trial court upon appellant's Section 6(c) election must be answered "No." (See part XVI.) Comparable new Code provisions in this case were Rape of a Child (Sec. 21.09, V.T.C.A. Penal Code) and Aggravated Rape of a Child (Sec. 21.03, V.T.C.A. Penal Code). Submission of neither of these would violate double jeopardy and both should have been submitted.

Appellant contends the trial court erred in submitting Aggravated Rape of a Child, and should have only submitted Rape of a Child, because he had not been indicted for conduct constituting aggravated rape. These objections urged by appellant are equally true with respect to the charge on Rape of a Child because facts constituting that offense also were not alleged in the indictment. The objection, if valid, would preclude submission of any new Code punishment range. Because *no* new Code punishment range is affixed to the conduct described by the facts found by the jury, as can be seen by all, the election to be punished under the new Code, in such a situation, waives the right to demand pleading of the additional facts constituting Aggravated Rape of a Child and Rape of a Child. (See part XIII.) The trial court committed no error in overruling appellant's objections to the charge.

I concur in the affirmance of this case but dissent to the procedure endorsed by the majority.