Opinion issued December 17, 2015



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-01010-CR

———————————

**MARCUS D. JACKSON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 337th District Court
Harris County, Texas
Trial Court Case No. 1420051

**CONCURRING OPINION**

"Insanity" has been defined "as doing the same thing over and over again and expecting different results."[1] The thirty-five-year prison sentence assessed against appellant, Marcus Jackson, in the instant narcotics case illustrates the point.

Here, the trial court sentenced appellant to confinement for thirty-five years for the third-degree felony offense of possession of two cigarettes dipped in phencyclidine ("PCP"), which together weighed 1.93 grams,[2] less than a restaurant-size packet of sugar. Because appellant had twice been previously convicted of the felony offense of possession of a controlled substance, the punishment range for the instant offense is confinement in prison from twenty-five years to life.[3]

At the punishment hearing in this case, appellant admitted that he had, from May 1997 through March 2009, been convicted five times of the offense of possession of a controlled substance, namely PCP or cocaine, once of the offense of

---

[1] Although this definition is commonly attributed to Albert Einstein, it appears that it actually comes from a novel written by Rita Mae Brown. *See* THE ULTIMATE QUOTABLE EINSTEIN 473–74 (Alice Calaprice ed., 2011 ed. 2011) (crediting Rita Mae Brown and noting quote "[m]isattributed to Einstein").

[2] *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(8) (classifying phencyclidine as controlled substance in penalty group one), 481.115(a), (c) (Vernon 2010) (possession of between one and four grams of substance in penalty group one a third-degree felony).

[3] *See* TEX. PENAL CODE ANN. § 12.42(d) (Vernon Supp. 2015) ("[I]f it is shown on the trial of a felony offense other than a state jail felony punishment under Section 12.35(a) that the defendant has previously been finally convicted of two felony offenses, and the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final, on conviction the defendant shall be punished by imprisonment in the Texas Department of Criminal Justice for life, or for any term not more than 99 years or less than 25 years.").

delivery of cocaine, and once of the offense of criminal mischief. For these crimes, he received punishments ranging from thirty days in county jail, for possession of PCP in 2008, to four years in prison, for possession of PCP in 2009. In all, he estimated that he had been previously incarcerated by the state for approximately seven years.

Prior to the trial court's sentencing, appellant pleaded:

As of now I have been found guilty of PCP. I made a mistake. I didn't -- I wasn't out robbing, stealing, killing no one. I wasn't nothing. The only pain I was inflicting was upon myself. Things happen for a reason. Maybe this is for a reason. That's not for me to decide, but that is maybe what I asked for in a sense, because I can only speak on my religion and the way I talk to God. I asked Him every time that I knew I wasn't supposed to be smoking again, I was going to stop. I was going to stop. But at the time there was pressure upon me.

I left the house at 18 on bad terms with my father. We had a fight. I got out of jail. I moved back home. We were okay. After a while, maybe a month or two months after I was released, after my mother passed, he kicked me out. I was staying in my car for a month. Never resorted to going back to hustling. Never even thought about going to take something from anyone else. It's just not the type of person I am.

I stand by what I believe is true and what is to be honest. Do I think that I should be sent away for 25 years or better for this crime? No. . . .

. . . .

All I'm asking is to be treated fairly. Be treated just.

Appellant then asked the trial court for drug rehabilitation and treatment in lieu of a harsh punishment, and the following exchanged occurred:

3

The Court:        . . . So let me ask you this. Obviously you must have a drug problem. Do you admit to that or not?

[Appellant]:        Yes, I do, Your Honor.

The Court:        With these three pen trips, seven years in the penitentiary, do they have programs in the penal system, in the penitentiary, that you could take advantage of to talk about your drug use?

[Appellant]:        The only thing that I have been to was those that are called, I believe, like the program that you're supposed to go to before release. They are not like drug [programs] --

The Court:        Did you go to those programs?

[Appellant]:        Yes, I did.

The Court:        Did the programs have to do with your use of drugs?

[Appellant]:        No, it did not.

The Court:        Addictions and that type of thing?

[Appellant]:        No, it did not.

The Court:        So you're saying in the seven years that you've been incarcerated in the penal system in this state, you have never had any sort of information or drug rehab classes or training?

[Appellant]:        I have never had a drug rehab class, Your Honor.

Of course, in assessing appellant's punishment, the trial court may simply have disbelieved appellant's testimony and his expressed desire for treatment and rehabilitation. Regardless, the trial court's hands were tied—it had to assess

4

appellant's punishment for possession of the two cigarettes dipped in PCP at confinement for at least twenty-five years.[4] This is the law.[5] The Texas Legislature says so.[6] And, no doubt, many people of goodwill believe this should be the law.

However, many law enforcement officials and policy makers are beginning to question whether men and women addicted to narcotics like appellant, should, in his words, "be sent away for 25 years or better" for the simple possession of a miniscule amount of a controlled substance.

Houston Police Department Chief Charles McClelland recently expressed concern, stating:

> The criminal justice system cannot sustain itself under the overwhelming numbers [of individuals] we're putting in the system . . . . We are creating generations of young men and women, especially young, minority men, who will be unemployed for the rest of their lives.
>
> . . . .

---

[4]   *See id.*; *see also Mizell v. State*, 119 S.W.3d 804, 806 (Tex. Crim. App. 2003) ("A sentence that is outside the maximum or minimum range of punishment is unauthorized by law and therefore illegal."); *Farias v. State*, 426 S.W.3d 198, 200 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd) (noting sentence void if below minimum sentencing range).

[5]   *See* TEX. PENAL CODE ANN. § 12.42(d).

[6]   *See* TEX. CONST. art. III, § 1 (creating Texas Legislature and vesting it with law-making power); *Wright v. State*, 527 S.W.2d 859, 870 (Tex. Crim. App. 1975) (noting legislature "affixe[s]" "range of punishment" for "conduct found by the jury to have been committed"); *State ex rel. Smith v. Blackwell*, 500 S.W.2d 97, 104 (Tex. Crim. App. 1973) ("[T]he Legislature is invested with the law-making power of the people and may define crimes and prescribe penalties.").

When we have mandatory sentencing laws for minor crim[inal] offenses, drug offenses, for people who are really not the greatest threat to community safety, and who are using massive amounts of law enforcement resources, there has to be a better way.[7]

United States Senator John Cornyn, noting that "our prisons are overcrowded" and our criminal justice system "often perpetuates a vicious cycle in which prisoners are released unprepared to succeed,"[8] has recently introduced "historic bipartisan legislation to reform our nation's criminal justice system"—the Sentencing Reform and Corrections Act of 2015.[9]   In doing so, he explained that from 1940 through

---

[7]    St. John Barned-Smith, *HPD's Chief Seeks Reform*, HOUS. CHRON., Nov. 22, 2015, at B1.

[8]    John Cornyn & Sheldon Whitehouse, *How to Cut Crime and Save Money*, CNN.COM (Oct. 21, 2015, 4:50 PM), http://www.cnn.com/2015/10/21/opinions /cornyn-whitehouse-criminal-justice-reform/.  Chief McClelland has expressed a similar sentiment:

> [I]f you think about it, we are sentencing these people we arrest on a very frequent basis for minor crimes to life sentences . . . . [I]f a person has nothing to be released to – no family structure, no opportunity for legitimate employment, no education, no job skills – the system is almost guaranteeing you're going to get involved in some illegal activity and go back to prison.

Barned-Smith, *supra* note 7, at B1.

[9]    *See* Sentencing Reform and Corrections Act of 2015, S. 2123, 114th Cong. (2015); *see also United States v. Saena Tech Corp.*, Nos. 14-66 (EGS), 14-211 (EGS), ---F. Supp. 3d ---, ---, 2015 WL 6406266, at *25–29 (D.D.C. Oct. 21, 2015) (noting current national focus on "reducing sentencing disparities and lowering the offense levels applicable to certain drug crimes," including legislation "currently pending in Congress" aimed at "reduc[ing] mandatory-minimum sentences in certain cases and otherwise provid[ing] more opportunity for the sentences of drug offenders to be more closely tailored to the particular offense"); SAFE Justice Act, H.R. 2944, 114th Cong. (2015) (bipartisan legislation aimed at limiting application of federal mandatory minimum drug sentences to highest-level offenders); Smarter Sentencing Act of 2015, S. 502, H.R. 920, 114th Cong. (2015) (bipartisan legislation

6

1980, the federal-prison population was stable at approximately 24,000 inmates, but today there are over 200,000 men and women in federal prison.[10]

Likewise, Texas has experienced a similar exponential growth of our prison population. In 1945, Texas's prison-inmate population was 3,270.[11] In 2014, it was 166,043, more than any other state in the country.[12]

Further, as of 2010, the United States was spending more than $80 billion on criminal corrections expenditures at federal, state, and local levels.[13] And one study

---

aimed at reducing costs of prison populations by creating fairer, less costly minimum terms for nonviolent drug offenders); Justice Safety Valve Act of 2015, S. 353, H.R. 706, 114th Cong. (2015) (bipartisan legislation aimed at allowing federal courts to sentence criminal defendants below mandatory minimum sentenced if term fails to fulfill goals of punishment and other sentencing criteria).

[10] *See* Cornyn & Whitehouse, *supra* note 8.

[11] *See* Paul M. Lucko, *Prison System*, *in* 5 THE NEW HANDBOOK OF TEX. 341, 343 (Ron Tyler et al. eds., 1996).

[12] *See* E. Ann Carson, *Prisoners in 2014*, U.S. DEP'T OF JUSTICE, OFFICE OF JUSTICE PROGRAMS, BUREAU OF JUSTICE STATISTICS 3 (Sept. 2015), http://www.bjs.gov/content/pub/pdf/p14.pdf.

[13] *See* Melissa S. Kearney et al., *Ten Economic Facts about Crime and Incarceration in the United States*, THE HAMILTON PROJECT 2, 13 (May 2014), http://www.brookings.edu/~/media/research/files/papers/2014/05/01%20crime%20facts/v8_thp_10crimefacts.pdf (noting "more than 90 percent" of $80 billion corrections expenditures "occur[ed] at state and local levels"); Aimee Picchi, *The High Price of Incarceration in America*, CBSNEWS.COM (May 8, 2014, 5:53 AM), http://www.cbsnews.com/news/the-high-price-of-americas-incarceration-80-billion/ (explaining United States spent more than $80 billion on corrections expenditures at federal, state, and local levels in 2010); *see also* Matt Vespa, *Our Ruinously Expensive Criminal Justice System*, TOWNHALL.COM (July 17, 2015), http://townhall.com/tipsheet/mattvespa/2015/07/17/criminal-justice-event-n2026028 (noting "our criminal justice system has seen an explosion in government spending on the federal level amounting to an 800 percent increase").

has found that "[c]rime-related expenditures generate a significant strain on state and federal budgets" and "[t]oday's high rate of incarceration is considerably costly . . . with state governments bearing the bulk of the fiscal burden."[14]

For instance, in 2012, Texas spent $50.04 per person, per day to incarcerate a single individual in a Texas prison.[15] At that time, there were approximately 137,095 individuals incarcerated in Texas prisons, meaning the state was paying $6,860,233.80 per day to imprison such individuals.[16] Further, of the 137,095 individuals in Texas prisons in 2012, 20,313 of them were incarcerated for drug-related offenses, approximately fifty-one percent of which were possession-only drug offenses.[17] Thus, based on these figures, in 2012, Texas spent $516,963.24 per day to incarcerate individuals, like appellant, in prison for possession-only drug offenses.[18] And this amount does not include the $144,658.80 also spent per day by

---

[14]     Kearney et al., *supra* note 13, at 12–13.

[15]     *See* LEGISLATIVE BUDGET BD., CRIMINAL JUSTICE UNIFORM COST REPORT, FISCAL YEARS 2010 TO 2012 8 (Jan. 2013), http://www.lbb.state.tx.us/Public_ Safety_Criminal_Justice/Uniform_Cost/Criminal%20Justice%20Uniform%20Cost %20Report%20Fiscal%20Years%202010%20to%202012.pdf.

[16]     *See id.*; TEX. DEP'T OF CRIMINAL JUSTICE ("TDCJ"), FISCAL YEAR 2012 STATISTICAL REPORT 1, http://www.tdcj.state.tx.us/documents/Statistical_Report _FY2012.pdf.

[17]     *See* TDCJ, *supra* note 16, at 1, 9 (10,331 individuals incarcerated in Texas prisons in 2012 for possession-only drug offenses).

[18]     *See* LEGISLATIVE BUDGET BD., *supra* note 15, at 8; TDCJ, *supra* note 16, at 9.

the state to incarcerate individuals in Texas state jails for possession-only drug offenses.[19]

Of course, the human toll cannot be calculated.

Perhaps it is time for the Texas Legislature to follow Chief McClelland's and Senator Cornyn's leads and consider whether it is really worth the cost, in both human and financial terms, to impose decades-long prison sentences on nonviolent offenders like appellant. Maybe, as pointed out by Chief McClelland, onerous prison sentences for nonviolent offenders are only making matters worse, feeding an insatiable criminal justice machine that, in Senator Cornyn's words, "often perpetuates a vicious cycle in which prisoners are released unprepared to succeed"?[20] As explained by Chief McClelland:

> There are many who believe that the criminal justice system is broken. I'm certainly not one to believe it's broken; it's producing the results it's designed to produce.
>
> If we want different results, the system must be reformed. Because it's doing exactly what it is designed to do.[21]

---

[19] *See* LEGISLATIVE BUDGET BD., *supra* note 15, at 8 (costs state $42.90 per person, per day to incarcerate individual in Texas state jail); TDCJ, *supra* note 16, at 9 (in 2012, 3,372 individuals incarcerated in Texas state jails for possession-only drug offenses).

[20] *See* Cornyn & Whitehouse, *supra* note 8.

[21] Barned-Smith, *supra* note 7, at B1.

Then again, maybe Chief McClelland is wrong and we will get a different result this time. Maybe, just maybe, this time appellant will emerge from prison not an addict, but completely rehabilitated and employable.

Terry Jennings<br>
Justice

Panel consists of Justices Jennings, Keyes, and Bland.

Jennings, J., concurring, joined by Keyes, J.

Publish. TEX. R. APP. P. 47.2(b).

10