## Combs, et al. v. Turner, et al.

(Decided February 3, 1922.)

### Appeal from Breathitt Circuit Court.

1. Quieting Title—Title of Plaintiff.—The suit filed by plaintiff construed to be an action to quiet title to land and not a suit to enjoin a trespass.

2. Quieting Title—Title of Plaintiff.—In a suit to quiet title to land the plaintiff must recover on the strength of his title, and not on the weakness of defendant's title, but is permitted to show title in himself by adverse possession for the requisite length of time.

3. Adverse Possession—Boundaries.—To establish title by adverse possession to unenclosed woodland, the claimant must show a continuous adverse possession and claim to a well defined boundary and the claim must be so notorious as to amount to constructive notice of its adverseness.

4. Adverse Possession—Evidence.—Evidence examined and held to be insufficient to establish title by adverse possession in plaintiffs or their grantors or to warrant the relief sought in the petition.

W. L. KASH and GRANNIS BACH for appellants.

O. H. POLLARD, A. H. PATTON and C. C. TURNER for appellees.

OPINION OF THE COURT BY JUDGE MOORMAN—Reversing.

This suit was filed in the Breathitt circuit court by Irvine Turner and Samuel Turner, the appellees, against Alexander Combs, Lewis Deaton and Alfred Combs, the appellants. The petition alleges that plaintiffs are the owners and in possession of a described tract of land; that defendants, on the 16th day of July, 1917, unlawfully entered upon the land and wrongfully cut trees standing thereon. It further alleges that plaintiffs and those under whom they claim had been in actual, open, notorious, continuous and adverse possession of the land described for more than twenty-five years, next before the commission of the wrongs complained of. The plaintiffs asked that defendants be enjoined and restrained from entering upon the land or moving any of the timber cut from it or from further trespassing on it or interfering with the plaintiffs' possession and enjoyment of it; that their title to the land be quieted; and upon final hearing, that the injunction be made perpetual. A temporary restraining order was issued.

Defendants filed answer putting in issue the material averments of the petition, and affirming ownership and actual possession of two tracts of land described by metes and bounds. They asked for the dismissal of the petition, and that they be adjudged the owners of the land described in the counterclaim, which embraces the land in controversy.

The judgment appealed from enjoins the defendants from entering on the land described in the petition,

or trespassing on it, or interfering in any way with plaintiffs' enjoyment and possession of the same.

A question on which the decision of this case depends is, whether this is a suit to quiet title or one merely to enjoin a trespass. If the former it was incumbent on appellees to show title to the land in controversy, if the latter possession of it at the time of the trespass and the filing of the suit is a sufficient foundation for the asserted right.

The tract described in the petition was conveyed to appellees about the year 1913 by heirs of J. C. Callahan, the deed of conveyance including two tracts separately described. The land in dispute has no residence or buildings on it and has never been occupied. Appellants' claim to the two tracts, described in their answer, rests on a patent of 110 acres issued to Elijah Bolen on the 29th day of December, 1852, and another of 50 acres issued to William Herald on March 1, 1876, the latter including the land in dispute. They showed titled derived from these patents. It is admitted that the 110 acre patent is not involved in this controversy, but it is said that the patent of 50 acres of 1876 is largely included in a previous patent of 100 acres issued to Elijah Bolen on September 10, 1846. The land in controversy being included in two patents, it is contended for appellees that the junior patent, under which appellants claim, is void. It should be observed here, however, that appellees do not trace their title back to the patent of 1846, though the patent is introduced in evidence; and consequently the questions of priority and validity of the two patents as relating to each other are not presented.

It is not shown that J. C. Callahan, whose heirs are grantors of appellees, ever had a deed to the land in controversy or that he ever lived on any part of it. All of it, except about seven acres, which was cleared twenty or twenty-five years ago and which in a few years was abandoned, is woodland.

The first question to be determined, as we have indicated, is whether this is a suit to quiet title, in which event the appellees must recover on the strength of their title; or whether it is merely a suit to enjoin a trespass, in which case it can be maintained by proof of their possession when the trespass was committed and the suit filed.

It is contended for appellants that appellees were required to show paper title, and having failed to do so the

judgment must be reversed. For appellees it is insisted that this is a suit to enjoin a trespass and is maintainable on the showing of possession in them. Undoubtedly if the character of the suit is as assumed in the premise of appellees, their legal proposition is sound. (Hall v. Daton, 24. Ky. L. Rep. 314; Crate v. Strong, 24 Ky. L. Rep. 710.) But the two contentions go at once to the inquiry suggested.

Appellees in their petition alleged ownership and possession of the land described therein. Their title was derived, as alleged, from actual, adverse and continuous possession for the necessary period of time. The relief which they sought was to enjoin and restrain appellants from cutting and removing timber from it and to quiet their title to it as against appellants. Appellants in their answer put in issue the title of appellees, and made claim to the ownership and possession of the land, asking that they be adjudged the owners of it. The judgment enjoined and restrained appellants from removing any timber from the land or from trespassing on it or from interfering in any way with the appellees in the enjoyment and possession of it, and thus granted the permanent relief of quieting the title of appellees as against appellants. It is apparent, therefore, that the parties, as well as the trial court, treated the suit as one to quiet title as against appellants, and such is the effect of the judgment. The suit must be so treated here.

From the conclusion just announced it follows that appellees, in order to obtain the relief which they sought, were required to prove title in themselves. (Williams v. Brush Creek Coal Co., 149 Ky. 188; Board v. Dorris, 168 Ky. 195.) It was also incumbent on them to show actual possession of the land at the commencement of the action. But the later condition, under the decisions of this court, is not material in view of the fact that appellants were likewise asserting title, and the court having acquired jurisdiction of the controversy could properly decide the case on its merits, regardless of whether appellees were in actual possession of the land at the time the proceeding was instituted. (Fox v. Cornett, 124 Ky. 435; Johnson v. Farris, 140 Ky. 135; Hall v. Hall, 149 Ky. 817; Sackett v. Jeffries, 182 Ky. 696; Cooper v. Williamson, 191 Ky. 213.)

Two surveys were made with a view of locating the three patents mentioned, in both of which the 110 acre

patent of December, 1852, and the 50 acre patent of 1876 were practically identically located. Plats of the surveys are filed with the record, according to which there is a wide divergence in the location of the patent of 100 acres of September 10, 1846. The plat relied on by appellees includes in the boundary of that patent the 50 acre patent of 1876, whereas the plat relied on by appellants excludes therefrom the 50 acre patent of 1876 and likewise the land in controversy. The location of the patent of 1846 is, however, not pertinent, because, as we have seen, no attempt was made by appellees to prove paper title to the land or to establish title derived from that patent. Their claim of title, as alleged, is that of continuous and adverse possession for the requisite length of time. If, as they claim, their occupancy, use and possession and that of their vendors, have been such as to give them title by adverse possession, they can nevertheless maintain this action. (Vallingham v. Taylor, 23 Ky. Law Rep. 1059; Goff v. Lowe, 32 Ky. Law Rep. 1098; Overton v. Perry, 129 Ky. 415; Newsome v. Hamilton, 142 Ky. 5.)

In LeMoyne v. Roundtree, 135 Ky. 40, we held that where one owning land gave it to his son-in-law, with other coterminous land which he did not own, and the son-in-law entered on the latter, which was rough, uninclosed mountain land, inclosed a few acres and occasionaly cut timber and tanbark on the part uninclosed but did not claim to any well defined boundary, it was insufficient successfully to maintain a claim of adverse possession to the land other than the inclosed portion, since a trespasser cannot obtain title unless he claims to a well defined boundary.

In Ohio & Big Sandy Railroad Company v. Wooten, 20 Ky. Law Rep. 383, it was said, "that mere claim of ownership with frequent cutting and removing of timber from the tract of land does not constitute actual occupancy or possession within the meaning of the law."

And in Kountze v. Hatfield, 30 Ky. Law Rep. 589, it was said:

"Therefore, in order to give them title by adverse possession against the patent under which appellant claims, they must show not only that they were in the actual, adverse and uninterrupted possession of the land claimed by them, but to a well defined boundary, and in our opinion they have failed to introduce evidence suffi-

cient to support their claim in this respect. It may be conceded that their adverse holding extended to the full limit of the land cultivated or enclosed by fence but outside of that their holding does not go. And the evidence is very clear that nearly all of the trees were cut outside of the line of fencing erected by appellees and the land cultivated by them. Appellant traces his title to the land in controversy back to the Commonwealth while the appellees rest their claim entirely upon adverse possession."

This decision was referred to in the LeMoyne case, *supra,* where Floyd v. L. & N. R. R. Co., 25 Ky. Law Rep. 2149; Hilton v. Strubbs, 22 Ky. Law Rep. 1919; Mann v. Cavanaugh, 110 Ky. 787, were cited as supporting authority.

In the subsequent case of LeMoyne v. Hays, 145 Ky. 415, it was said:

"But in order for a trespasser to obtain such a title beyond his actual close, he must have some well defined or well marked boundary showing the extent of his claim; and unless he has such a boundary his title will be restricted to the land that he has actually enclosed, and which he had had in actual, adverse possession for at least fifteen years."

In that case, Hilton v. Strubbs, 22 Ky Law Rep. 1920, among other authorities, is referred to and it is pointed out that by making an inclosure upon a part of the land, the claimant cannot lay claim to a large, undefined boundary, that is undefined so far as sufficient enclosure may be concerned.

The rule in this jurisdiction as uniformly applied, is that the claimant of title by adverse possession must show a continuous adverse possession and claim, to a well defined boundary, and the claim must be so notorious as to amount to constructive notice of its adverseness.

Applying the doctrine to the evidence in this case, and giving due weight to the finding of the chancellor, we are unable to say that the claim of appellees was of the character and notoriety requisite to the perfecting of title in them. Practically all of the land is woodland. Neither appellees nor any of their grantors ever lived on the land in controversy. The boundary is not certainly marked or defined. There was some evidence showing that there is fencing on a part of two sides of the land, but there is no enclosure and the evidence is very indefi-

nite and confusing as to the extent of any claim made by the grantors of appellees. They did fence and cultivate a small part of the land about twenty years ago, but afterwards apparently abandoned it; it is not enclosed now and is covered with young timber. There is evidence showing that J. C. Callahan caused some timber to be cut on a part of the land, and that appellees and others did a small amount of cutting on it, also other evidence tending to show that William Herald paid Callahan for some trees that he cut on it. But there is evidence for appellants to the effect that they had cut crossties and timber on the land and that William Herald had also cut some timber. In fact there is evidence that the appellees and their predecessors and also that appellants had occasionally taken timber from the land, but the evidence for neither party in this respect is sufficient to show adverse possession to a well defined boundary, or such possession as could be said to be adverse to the holder of the legal title. Giving full effect to William Herald's disclaimer of ownership to part of the land, there is still not sufficient evidence in the record to establish title, by adverse possession, in appellees or their grantors.

William Herald conveyed the disputed land to appellant, Alex. Combs, and it is admitted that the patent of March, 1876, embraces that land. The right asserted by appellees in this action, if sustainable, must be based on a title acquired by adverse possession. Such adverse possession must have been to a well defined line and the evidence of occasional acts committed on the land, with spoken claims with reference thereto, by appellees and their predecessors, is not sufficient, in view of similar claims and acts on the part of appellants, whose paper title is good, to warrant a finding that the title by adverse possession is in appellees.

For these reasons it was error to grant the injunction and the judgment is reversed with directions to the court below to dismiss the petition.