EX PARTE OTTO E. NEISLER.

No. 16541.   Delivered January 17, 1934.
Rehearing Denied March 28, 1934.

The opinion states the case.

*Jno. M. Mathis, Jr.,* of Houston, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—From an order remanding appellant he has appealed. He filed an application for habeas corpus in the District Court of Walker County, setting up that he was convicted of a felony on October 19, 1931, in Galveston, Texas, and given four years in the penitentiary, and that he was received at the penitentiary on April 17, 1932; that he has served

two years, one month and four days of his sentence; is entitled to five months and eighteen days commutation for good behavior; also is entitled to one year, five months and eight days commutation for overtime work, all of which he avers aggregates four years, and that he was entitled to his discharge from prison on November 23, 1933. Apparently being in doubt as to the proper construction of the statutes applicable, the district judge remanded appellant.

The meager statement of facts has caused us such trouble as that we were tempted to merely affirm the judgment without analysis or discussion, but the gravity of some matters of procedure on the part of prison officials of much importance, if in error, is so strongly suggested as that we express our views. The statement of facts referred to consists almost entirely of two purported prison records of this appellant, "figured both ways," as stated by appellant's attorney when he introduced said purported records. The records are but conclusions, the result of computations, and are signed by Lee Simmons, General Manager, by W. M. Thompson, Chief Bureau of Records and Identification, E. A. S. We do not know how much weight was given to these documents by the learned trial judge.

As above stated, this conviction was on October 19, 1931. Prisoners are entitled to credit on their sentences for time spent in jails after conviction and sentence, hence this appellant would be entitled to credit on his four year sentence for the five months and twenty-eight days between October 19, 1931, and April 17, 1932, when he was received at the penitentiary, but not entitled to any overtime credit for work done before said date.

Chapter 212, Acts Regular Session, 40th Legislature, contains our law on commutations for good behavior, and in terms says, in fixing commutation therefor: "Two days per month off the first year sentence; three days per month off the second year sentence; four days;" etc. Under all the authorities the word "month" in such usage means a calendar month. See Words & Phrases, 3d. Series p. 209, citing many authorities. The specific words "Per month" in such use are construed to mean a calendar month. Frazier v. Nashville Hospital, 139 Tenn. 440, 201 S. W. 751. It is said in Board of Correction v. Combs, 237 S. W. 37: "The Board * * * could not determine whether the prisoner had been of good conduct and was entitled to a credit for good behavior for one month until the month had expired." It is not doubted that our law regarding punishments, sentences and commutations thereof must be reck-

oned in terms of calendar days, months and years, i. e. in days twenty-four hours long, so many of which make up the calendar months as they come in due order, twelve of which make up a calendar year. In our view appellant could in no event claim commutation for good behavior, in excess of the two days off for each calendar month of the first year of sentence, amounting to twenty-four days; and three days per month for the second year of sentence, amounting to thirty-six days, plus four days per calendar month for each month of the third year of actual service, amounting on November 23rd, to about three days, or a total of sixty-three days.

When we come to consider appellant's claim for credit upon his sentence,—for one year, five months and eight days overtime work, we are confronted with a serious proposition. All the provisions of Title 108, Rev. Civ. Stats. 1925,—save such as related to the Board of Pardons,—were expressly repealed by chapter 212, Acts Regular Session, 40th Legislature. Section 25 of said chapter was amended by chapter 229, Acts Regular Session, 41st Legislature, in which last act appears our present law regarding credits for overtime work which should be given convicts in our penitentiary under the control of our Prison Board. It provides that a work-day for a convict shall be ten hours of work, and then further provides that when there is work "necessary and essential to the efficient organization of convict forces," convicts may be worked overtime, which plainly means that by such overtime is meant work more than ten hours per day. It is provided that for such overtime work such convict shall receive a credit on his sentence of double the hours of overtime so worked. It is also provided that this "necessary and essential work" shall be subject to the recommendation of the general manager to the Prison Board, and shall become effective only after approval by the Board. It is also provided that a strict accounting of overtime work shall be kept, and that the officer in charge of the inmate shall certify that of his own knowledge the overtime was actually earned. Attention is called to these provisions in view of what we are about to say.

Among the provisions of Title 108, supra, which were expressly repealed, was a provision fixing the number of overtime hours which should amount to a day. No such provision is now found in the law. It is plain then that in now computing such overtime work in order to give credit therefor on sentences of convicts, the prison authorities must compute same in terms of hours until double the number of hours of overtime work reach

such aggregate as equals a calendar day of twenty-four hours; and equally true that the same method of computation must be pursued in arriving at months or years for credit for overtime upon such sentences. In other words, under our present law the convict must have worked his regular ten hours per day before he could begin to earn overtime,—if work be then compelled because of press of work "necessary and essential to efficient organization of convict forces."

If we be correct in this view, it would appear physically impossible for any human being during one year, seven months and six days of confinement in the penitentiary,—as was the case of this appellant between April 17, 1932 and November 23, 1933,—to have given to the State of Texas the days of regular work required by law, and in addition to have worked overtime hours enough to aggregate a year, five months and eight days, as claimed by him, allowing him a credit for double the overtime hours actually worked. The meager statement of facts does not show how or in what manner such work was done or that in fact it was done.

Another matter is suggested for our discussion, i. e. that this appellant is entitled to commutation for good behavior calculated on that part of his sentence which he says must be deducted by reason of credits for overtime work from the four years given him. In other words, he says that if he is entitled to a year's credit for overtime work, his sentence must be cut by a further credit of so many days off for good behavior figured on the basis of such time credited for overtime, but not actually served by him. The proposition is not sound. A, a convict who serves one calendar month on his first year, is entitled under our law to two days credit on his sentence, in computing the actual time he must serve, if he has behaved ALL DURING SAID MONTH. Suppose A was physically able to work each day of said calendar month seven hours overtime in addition to the ten hours which makes up his statutory work day as a convict, which seven hours when doubled would make up the fourteen hours necessary to fully consume the twenty-four hours in each day of said month. Our law would say to A: "You are entitled under my provisions to credit for two days for good behavior during all the hours of all the days of this past calendar month." If A should demand credit for two other days off said month as a good behavior credit for overtime work done, such demand would be answered by the plain proposition that there is no such law written on our statute books, and to give him such two days would be simply donating two extra days for the

month upon which the two days good behavior allowed by law had already been computed. This attempted donation of time would be a direct invasion of the pardoning power of the Governor, who alone can exercise it under our Constitution. As said in the Combs case, supra: "No contemporaneous construction by administrative officials can be allowed to defeat the plain purpose and language of a statute." It might be added that no construction of a statute which would contravene the plain provisions of the constitutional grant of the pardoning power of the Governor, should be tolerated.

If our observations be correct in the above, appellant's commutation for good behavior on November 23, 1933 would be about sixty-three days plus a fraction for such commutation. We are not undertaking to say when appellant would be entitled to his discharge, but have indicated the line of computation regarding same which, in our judgment, should be followed. It is plain that in our view of the law appellant is not now entitled to his discharge.

The judgment will be affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING

MORROW, Presiding Judge.—In the motion for rehearing some disappointment is evinced because of the failure of the court to give more specific declaration as to when and under what circumstances the relator would be entitled to a discharge. It is to be borne in mind that the sole ground upon which this court would have jurisdiction of the application for writ of habeas corpus was that it might determine whether or not relator was entitled to discharge at the present time. Having reached the conclusion that he was not illegally restrained of his liberty, this court would be out of its sphere in endeavoring to determine at what time and under what circumstances the relator would be entitled to discharge. There is more or less confusion and conflict in the statutory provisions. At all event, the sole ground upon which this court can entertain jurisdiction is to determine whether or not the relator was entitled to discharge. A further discussion upon the subject would be merely dicta, and is therefore pretermitted.

We are constrained to overrule the motion for rehearing.

*Overruled.*