RENDERED: JUNE 17, 2021
TO BE PUBLISHED

# Supreme Court of Kentucky

2018-SC-0671-DG

EUGENE PHILLIPS                                                    APPELLANTS
AND CYNTHIA CLARK


                          ON REVIEW FROM COURT OF APPEALS
V.                               NO. 2017-CA-1030-
                          SCOTT CIRCUIT COURT ACTION NO. 11-CI-888


JOHN ROSQUIST                                                        APPELLEES
AND JUDY ROSQUIST


**OPINION OF THE COURT BY CHIEF JUSTICE MINTON**

**AFFIRMING IN PART AND REVERSING IN PART**

Years after buying Lot 89, a residential subdivision lot, Eugene Phillips and Cynthia Clark sued John and Judy Rosquist, the owners of an adjoining subdivision lot, claiming trespass and recovery of land adversely held and demanding both injunctive relief and monetary damages.[1]  More than a decade earlier and years before Phillips owned Lot 89, Rosquist excavated a portion of his lot and Lot 89 to allow the water from a lake touching both properties to cover a portion of both lots.  Rosquist's action, Phillips claimed in his suit,

---

[1] Unless the context indicates otherwise, we will refer to Phillips and Clark together as "Phillips" for simplicity because Phillips is the first-named appellant, although Clark alone is grantee in the deed to the residential subdivision lot at issue in this litigation, Victoria Estates, Lot 89.  Also for simplicity, we refer to John and Judy Rosquist as "Rosquist."

constituted a trespassory occupation of the portion of Lot 89 submerged by lake water.

The trial court's judgment granted Phillips a mandatory injunction, directing Rosquist to backfill Lot 89 and restore its former contours. The Court of Appeals vacated the trial court's judgment on statute-of-limitations grounds.

We accepted discretionary review to decide whether the Court of Appeals properly reversed the trial court's mandatory injunction and whether a member of the three-judge Court of Appeals' panel that decided this case below should have been disqualified from hearing the appeal.

We affirm the Court of Appeals' holding vacating the injunction because we find that Phillips never received title to the submerged portion of Lot 89. Without title to—or prior possession of—the submerged portion of the lot, we hold that Phillips cannot maintain a claim for trespass, for removal from land or recovery of land adversely held, or to quiet title in himself, differing with the Court of Appeals as to the applicable statute of limitations. And, while Phillips validly claims Rosquist's excavation violated the subdivision's restrictions, equitable relief is not available because Phillips acquired title to Lot 89 in its altered condition and failed, inexplicably, to bring a claim for four years after discovering Rosquist's violation of subdivision restrictions and over a decade after Rosquist completed the excavation of Lot 89. Accordingly, we affirm—on different grounds—the Court of Appeals' decision to vacate the trial court's injunction. We further conclude the judge on the Court of Appeals' panel below

2

should have recused himself under the circumstances presented by the record, although our decision on this issue does not affect the outcome of this case.

## I. FACTUAL BACKGROUND

Phillips and Rosquist live next door to each other in a gated community called Victoria Estates, a residential development with many of its component subdivision lots clustered around a manmade lake. All lots in Victoria Estates are platted and subject to mutual restrictive covenants. The community is governed by the Victoria Estates Homeowners' Association ("VEHOA"). The relevant subdivision restrictions forbid "excavation, grading and other site work," "building," or changing boundary lines except in strict conformity to the terms of the covenants' Article XI and prior approval from the VEHOA board of directors ("Board").

Phillips owns Lot 89 fronting on a street and extending to the margin of the lake to the rear. Rosquist owns Lot 92, situated similarly between the street and lake. The parties' shared boundary line runs from a street to the lake.

The trial court found that in 1999, Robert Young owned Lot 89, which he used merely to access the lake to fish. In late 1999, Rosquist excavated the shoreline of both Lot 89 and 92, lowering the elevation to allow water from the lake to flow over the excavated area to form a shallow cove and lengthen the lake frontage of both lots. The cove's surface area measures about 1,500 square feet and lies mostly over the original surface of Lot 89. Rosquist completed the excavation during the executory period of his contract to

3

purchase Lot 92. In the new cove, Rosquist floated a dock where he tied his small rowboat. Rosquist did not seek or obtain approval from the VEHOA for the excavation, and the dock violated restrictions forbidding unpermitted improvements, excavation, and construction.

Clark purchased Lot 89 seven years after the excavation—in November 2006. At least a year elapsed before Phillips discovered that Lot 89's original contours were changed. Four more years elapsed before Phillips filed the underlying suit against Rosquist.

Following a bench trial, the trial court ruled that Phillips was not entitled to damages for trespass under KRS 413.120 because Phillips accepted title to the lot in its altered state and the original trespassory act by Rosquist affected the interests of Phillips's predecessor in title, Mr. Young. The trespass was complete and permanent at the time Phillips took delivery of the deed to Lot 89, so Phillips could not maintain an action for trespass as the five-year statute of limitations for trespass had passed. But the trial court concluded Rosquist's actions constituted a violation of the subdivision's restrictive covenants and a continuing trespass governed by a fifteen-year statute of limitations under KRS 413.010. So the trial court ruled that Phillips's claims were timely asserted and that Phillips was entitled to a remedy "to remove the cloud on their title and to restore their land to conform to the deed to this property." The trial court issued an injunction requiring Rosquist to remove the dock and backfill the area to restore its original contours at an estimated cost of $80,000. The Rosquists appealed that judgment.

4

While the case was pending before the Court of Appeals, Phillips moved then-Court of Appeals Judge Robert Johnson, a member of the three-judge panel assigned to review his appeal, to recuse from the panel. The facts supporting the motion will be discussed later, but it suffices now to say that Phillips averred that Judge Johnson and the Rosquists were friends, Judge Johnson lived in same subdivision, and that Judge Johnson had extra-judicial knowledge of facts of the case or had prior contact with Rosquist concerning the case. While the original recusal motion was pending, Phillips filed an additional affidavit asserting that Rosquist's canoe, removed from the dock under the injunction, had appeared in Judge Johnson's yard. A unanimous Court of Appeals denied the motion to recuse.

Ultimately, the Court of Appeals reversed the trial court and vacated the injunction. The appellate court found Rosquist's excavation was a permanent trespass, not a continuing trespass, and subject to the five-year statute of limitations in either case. Because the permanent trespass was complete in 1999, the time for bringing the trespass action expired in late 2004. The court also found that Rosquist was not bound by the restrictive covenants because, although he had signed a contract to purchase Lot 92, he excavated both lots before legal title had finally transferred at closing. The Court of Appeals thus found the injunction against Rosquist improper.

Phillips then sought discretionary review in this Court, arguing the Court of Appeals erred by characterizing his remaining claim as an action for trespass instead of one to recover land adversely possessed, resulting in the erroneous

5

application of the five-year statute of limitations. Phillips now argues the character of his action is to recover land, the flooded part of Lot 89, adversely occupied by Rosquist, and that he has a fifteen-year statute of limitations entitling him to the injunction granted by the trial court. Phillips also maintains the Court of Appeals judge should have recused and that the unfavorable decision proved the judge's bias in Rosquist's favor.

## II. STANDARD OF REVIEW

This appeal presents for resolution primarily issues of law. We review these questions of law de novo, respectfully owing no deference to the legal determinations of the courts below.[2] The issues of law raised in this case include the construction and application of statutes,[3] the interpretation and legal consequence of a purported deed,[4] the denial of a motion to recuse,[5] and a critical issue, more or less previously raised by Rosquist, Phillips's standing to bring suit.[6] A trial court's decision to issue an injunction is subject to review for abuse of discretion.[7] And finally, while Rosquist disputes some of

---

[2] *S. Fin. Life Ins. Co. v. Combs*, 413 S.W.3d 921, 926 (Ky. 2013).

[3] *Overstreet v. Mayberry*, 603 S.W.3d 244, 252 (Ky. 2020) (citing *Nash v. Campbell Cnty. Fiscal Ct.*, 345 S.W.3d 811, 816 (Ky. 2011)) ("[I]n our assessment of the proper statute of limitations applicable to the causes of action at issue . . . our review is de novo."); *Wheeler & Clevenger Oil Co. v. Washburn*, 127 S.W.3d 609, 612 (Ky. 2004).

[4] *See Phelps v. Sledd*, 479 S.W.2d 894, 896 (Ky. 1972).

[5] *Abbott, Inc. v. Guirguis*, No. 2018-SC-0577-DG, 2021 WL 728860, at *6 (Ky. Feb. 18, 2021).

[6] *Hidalgo v. Commonwealth*, 290 S.W.3d 56, 58 (Ky. 2009).

[7] *Price v. Paintsville Tourism Comm'n*, 261 S.W.3d 482, 484 (Ky. 2008).

6

the trial court's factual determinations, in this appeal we adopt as conclusive the trial court's factual determinations, having found them supported by substantial evidence.[8]

### III. ANALYSIS

The thrust of Phillips's substantive appeal at this point is that he is entitled to recover land adversely held by Rosquist. He maintains that he has abandoned his trespass claim in the trial court for failure to meet the five-year statute of limitations, so he no longer seeks to recover damages for trespass as he avers the Court of Appeals mistook. Still, Phillips claims his recovery action was timely filed within fifteen years as KRS 413.010 prescribes, since Rosquist completed the trespassory act in 1999 and Phillips brought suit by 2011. Phillips also maintains that Judge Johnson should have recused, that conflicts of interest and his apparent relationship with Rosquist reasonably cast doubt on the Court of Appeals' decision vacating the injunction. Thus, Phillips asserts two primary errors of law on appeal.

First, we find Phillips never had standing to bring a recovery action with respect to the submerged land because title to that portion never passed to him under the deed to Lot 89, regardless of which statute of limitations would apply. And although the Court of Appeals incorrectly found Phillips lacked standing to bring an action to enforce restrictive covenants, it did observe correctly that Phillips failed to make a prima facie claim for trespass, barring a

---

[8] *Williams v. Commonwealth*, 364 S.W.3d 65, 68 (Ky. 2011). *See* CR 52.01.

7

remedy. Phillips bought the land under the infringing condition and knowingly delayed bringing suit, making an equitable remedy like this injunction unavailable under the circumstances. We also agree with Phillips that Judge Johnson should have recused himself, but find the issue moot, as Judge Johnson is now a former judge and the substantive issues are clearly dispositive of this case.

Before proceeding, we acknowledge that, although the issue was raised at least to the trial court,[9] the parties did not specifically argue Phillips's standing before this Court. The focus of the parties and Court of Appeals was on the underlying character of Phillips's remaining action and its associated statute of limitations. While on other issues we may ordinarily refrain as a matter of prudence from disposing of cases based on theories not presented in the parties' briefs,[10] it is well-settled that we may affirm on any grounds supported by the record,[11] especially on pure matters of law central to the

---

[9] Phillips himself acknowledged this in a "Surreply to Defendants' Submission of September 5, 2013" ("The Defendants continue to assert that the Plaintiffs have no standing to challenge the obvious injury done to their land.").

[10] 5 Am. Jur. 2d *Appellate Review* § 618 (2007) ("It is axiomatic that an appellate court will generally not review any issue not raised in the court below."); § 619 ("[But] the court is not prohibited from doing so, and may decide cases on issues or theories not raised. The rule that a reviewing court will address only issues raised in the trial court is a limitation on the parties to an appeal and not on the reviewing court.") (citations omitted).

[11] *Combs*, 413 S.W.3d 921, 926 (Ky. 2013). *Haddad v. Louisville Gas & Elec. Co.*, 449 S.W.2d 916, 919 (Ky. 1969) ("It is familiar law, however, that a correct decision will not be disturbed on appeal merely because it was based on an incorrect ground or reason, and this is especially so where the correct grounds were presented to the trial court but not acted upon by it.").

controversy, standing specifically.[12]  At least where, as here, the facts

controlling the issue are part of the record, clear and undisputed, and

especially where a legal issue is so inextricable from a just outcome under

those facts, the Court is at liberty to settle the matter on its own motion.[13]   In

order to effect the right outcome, we must take that liberty now with respect to

Phillips's recovery claim.

### A. Phillips lacks standing to recover or quiet title to the submerged land from the purported adverse possession.

Phillips sees his remaining action before this Court as one to recover the

submerged land, although the precise taxonomy of his claim is debatable given

the unusual manner of Rosquist's intentional possession.[14]  Still, the fact

remains that Phillips's purported entitlement to "recover" the submerged land

rests entirely on a purported ownership interest, that Rosquist is infringing on

Phillips's exclusive right to possess Lot 89 as it existed years before he took

---

[12] *See* 5 Am.Jur. 2d *Appellate Review* § 619 (describing the ability of a reviewing court to address and resolve certain issues on its own motion, specifically standing, other pure issues of law, and issues affecting the right to maintain the action, even where the issue was not raised at all).

[13] *See id.*

[14] Phillips's citations address several different forms of redress.  For instance, in his effort to correct the Court of Appeals' perceived misconception of the claim as an action for trespass, Phillips cites *Wood v. Wingfield*, 816 S.W.2d 899 (Ky. 1991), holding the fifteen-year statute of limitations period under KRS 413.010 applies to actions to recover real property, that said limitations period runs from when the owners are ousted from the property, and that Rosquist *ousted* the owner of Lot 89 in 1999, and Phillips brought suit within fifteen years in 2011.  He then cites *Justice v. Graham*, 246 S.W.2d 135 (Ky. 1952), holding *a challenge to adverse possession* must be brought in fifteen years, and *Commonwealth Dep't of Parks v. Stephens*, 407 S.W.2d 711 (Ky. 1966), holding *quiet-title claims* have a fifteen-year statute of limitations. Whether Phillips's claim is ultimately to challenge adverse possession, for ouster, or to quiet title, and perhaps those claims overlap, all would require Phillips to demonstrate superior title or possession to the specific land in question, the submerged land.

9

title to the lot. Independent of determining the specific character of Phillips's action, the Court cannot avoid an antecedent conclusion that Phillips never owned the now-submerged area to begin with. Because title to the submerged land failed to pass to Phillips under the deed conveying Lot 89 to him, he has no right now to recover land to which he never took title. So, although it was not raised to either the Court of Appeals or this Court, only to the trial court, the issue goes to the very justiciability of Phillips's claim.

It remains not merely an option but a constitutional duty of *all* courts of the Commonwealth, including this one, to refrain from resolving controversies that are not justiciable.[15] Standing is a fundamental question going to the justiciability of a plaintiff's claim. Where the plaintiff lacks standing to bring a claim, especially for such a basic reason as lack of title, the claim is not justiciable,[16] and a Kentucky court must, even on its own motion, dismiss claims to which the claimant or plaintiff lacks standing.[17] To the extent the trial court and the Court of Appeals entertained Phillips's claims premised on purported ownership, that was error as a matter of law. Regardless of whether Phillips's action is to recover against adverse possession, trespass, or quiet

---

[15] *Commonwealth of Kentucky, Cabinet for Health & Fam. Servs., Dep't for Medicaid Servs. v. Sexton*, 566 S.W.3d 185, 192 (Ky. 2018).

[16] *See id.* at 196–97 ("Stated more simply, establishing the requisite ability to sue in circuit court is a necessary predicate for continuing that suit in appellate court. In this way, the justiciable cause requirement applies to cases at all levels of judicial relief.").

[17] *Id.* ("We hold that all Kentucky courts have the constitutional duty to ascertain the issue of constitutional standing, acting on their own motion, to ensure that only justiciable causes proceed in court, because the issue of constitutional standing is not waivable.").

title, the claim fails as long as it is premised on purported title to the submerged land.

We conclude Phillips cannot sustain his action to recover for an adverse possession for lack of legal title or prior possession to said land. Kentucky sources are hardly available expressly stating that challenges to another's adverse possession like Phillips's require the claimant have a superior right of possession, whether derived from title or prior possession. The assumption is so basic and obvious it typically goes without saying: a claimant challenging an adverse possession premised on prior and superior title cannot bring the claim without such title or prior possessory interest.[18] For the same reason, where his claim is based on purported title he does not actually have, Phillips may not enjoin a trespass,[19] although Rosquist's excavation can be properly

---

[18] *See* 3A Ky. Prac. Real Estate Trans. § 19:16 (a plaintiff's pleading in a recovery action involves assertion of ownership); 2 Am. Jur. 2d *Adverse Possession* § 13 (2002) ("One claiming title by adverse possession always claims in derogation of the right of the *true owner,* admitting that the *legal title is in another.*") (emphasis added).

[19] *Combs v. Turner,* 237 S.W. 37, 38 (Ky. 1922) (stating as a rule that injunction for a trespass requires right of possession at the time of trespass *and* the filing of the suit); 75 Am. Jur. 2d *Trespass* § 18 (2007) ("The essence of a trespass to real property is the injury to *the right to possession.*"). While ownership is not a strict prerequisite for a trespass claim, the right to possess is. *Id.* at § 31. *See id.* at § 29 ("To maintain an action of trespass, the plaintiff must have had actual or constructive possession of the real property in question at the time when the alleged injury occurred.") (citing *Bowman v. Hibbard,* 236 S.W.2d 938 (Ky. 1951)). Where the right to sole possession is premised on a claim to fee title, a trespass plaintiff must actually hold title.

Given the nature of Rosquist's former trespass, we note that a "continuing trespass" is an exceptional form of trespass not subject to the general possession-timing rule. This exception is not applicable here, but we anticipate questions about it. Indeed, an action to enjoin or recover for continuing trespass may accrue to subsequent owners, though they lacked possession or title when the trespass began *Id.* at § 29 (citing *Bowman,* at 941). But as Phillips concedes in brief and both courts below already settled, trespass of the character in this case resulted in a permanent

11

characterized as a form of trespass, as the Court of Appeals observed.[20]  Nor can Phillips quiet title in his favor without title,[21] or alternately eject Rosquist from an alleged ouster.[22]

We accept multiple findings of the trial court bearing on the issue of Phillips's ownership.  First, Robert Young purchased Lot 89 in 1998.  Of course, at that time Lot 89 included as part of its dry ground part of that area now submerged by the lake.  Rosquist initiated and completed his excavation in late 1999, after he had signed a contract to purchase Lot 92 but before he had closed on the deal.  When Young returned to discover the cove in Spring

---

structure or alteration to the land itself, the cove, which does not constitute a continuing trespass. *Fererson v. Utils. Elkhorn Coal Co.*, 313 S.W.2d 395, 400 (Ky. 1958) (a structure is permanent "if the structure is one which may not be readily remedied, removed, or abated, at reasonable expense, or is of durable character intended to last indefinitely. . . ."). The permanency of the trespass here takes the cove out of the category of "continuing trespasses."

[20] This Court has consistently held that flooding caused by permanent structures or alterations accrue in actions for trespass, running five years from the completion of the structure. *See, e.g.*, *Fitzhugh v. Louisville & N.R. Co.*, 189 S.W.2d 592, 594 (Ky. 1945) (railroad culvert causing flooding damaging to crops); *Louisville Hydro-Elec. Co. v. Coburn*, 110 S.W.2d 445, 447 (Ky. 1937) (river embankment causing regular flooding and stagnant backwater to accumulate and access-blocking accumulation); *Moore v. Lawrence Cty.*, 136 S.W. 1031, 1031 (Ky. 1911) (culvert causing greater waterflow over plaintiff's land). *See also Bickett v. Countrymark Energy Res., LLC*, 250 F. Supp. 3d 309, 318 (W.D. Ky. 2017).  As the courts below in this case correctly observed, the trespass action against Rosquist to recover for this permanent trespass had to be, though it was not, brought within five years of the time of completion of the cove in 1999.  *See* KRS 413.120(4).

[21] *Combs*, 237 S.W. 37 at 38 (stating as a rule that a claimant bringing an action to quiet title must show title to the land in controversy).

[22] *Engle v. Walters*, 282 Ky. 732, 140 S.W.2d 402, 403 (Ky. 1940) (claimant seeking to eject another must prove superior title); 3A Ky. Prac. Real Estate Transactions, *Essential allegation in ejectment* § 20:3 (2020) ("The essential allegations in ejectment are [t]he title of the plaintiff to certain land.").

These are the various possession-based causes of action Phillips discusses or alludes to in his briefs.  We need not conclusively determine what the precise nature of the claim is, or which he chooses.  The result is the same in every case.

12

2000, he verbally protested but apparently took no further action against Rosquist. Clark purchased Lot 89 by general warranty deed in 2006 from Craig Campbell and Manda Johnson, who apparently owned Lot 89 after Young did, and nothing suggests they complained or otherwise took action against Rosquist. Phillips did not discover Rosquist's excavation until a year after he bought Lot 89. Phillips brought action four years later in 2011. So no previous owner of Lot 89, nor VEHOA, nor any other residents in Victoria Estates brought a legal claim against Rosquist or sought to enforce restrictive covenants against him until Phillips brought suit just under 12 years later in 2011.

Phillips's claim is premised on title ownership, but Phillips was not conveyed title to the submerged land via the deed to Lot 89. The property description in a deed defines the land that is to be conveyed,[23] and a deed "speaks" at the moment it is delivered to the grantee.[24] A specific description cannot be extended to include property that is outside its terms,[25] and the description of the land based in part, as here, on certain physical features and monuments is generally understood in relation to physical conditions of the premises openly and visibly appearing to the parties to a deed at the time of delivery.[26] Under these basic principles of deed construction, the deed

---

[23] 26A C.J.S. Deeds § 96 (2021).

[24] *Williams v. Thomas*, 149 S.W.2d 525, 527 (Ky. 1941).

[25] 26A C.J.S. Deeds § 244 (2021).

[26] *Id.* at § 249 ("If the description is doubtful or uncertain, the court will as nearly as possible assume the position of the parties, and interpret their words in the light of the circumstances surrounding the transaction. The inquiry should, however,

13

language, interpreted in light of circumstances apparent to Phillips in 2005, compels the conclusion that the deed never transferred the submerged land to Phillips.

The 2005 deed describes the land by reference to a recorded plat, as: "Being all of Lot No. 89 of Victoria Estates . . . as shown on that final Subdivision Plat which is recorded in Plat Cabinet No. 1861, in the Scott County Clerk's Office." This Subdivision Plat dated October 3, 1997, bears a visual representation of subdivision lots 68–100 of Victoria Estates in a map, with boundary lines measured around each lot. The lake is featured prominently in the map as the centerpiece of Victoria Estates. But as the map was drawn in 1997 before Rosquist's excavation, it does not reflect the cove now extending into Lot 89 and 92 as it would later appear by visual inspection of the lot. The Plat has a dozen written "Items" applicable to all the lots in the subdivision. Item 1 incorporates by reference the "covenants, conditions, and restrictions for Victoria Estates," and indicates the county clerk's office where they are recorded. Item 11 states: "Lot lines along the boundary of the lake are intended to follow the meanders of the highest pool elevation of the lake *regardless of any metes and bounds.*"[27]

---

be confined to the time of the execution of the deed without reference to later circumstances. The parties will be presumed to have been influenced only by facts they knew of. In particular, there is a presumption that the grantor intended to convey—and the grantee intended to take—the premises as they openly and visibly appeared at the time of the conveyance.").

[27] (emphasis added).

This Item 11 is crucial because it defines the boundaries of lakefront lots by direct reference to the present dimensions of the lake itself, as a body of water and visible geographic condition, *notwithstanding* the lines and measurements in the mapped-out Subdivision Plat referenced in the deed. Under the plain language of Item 11, the meanders of the lake shore supersede any distance representations of Lot 89 in the Subdivision Plat. As the Court of Appeals observed correctly, the land conveyed to Phillips extends down to and then terminates at the margin of the lake as it appeared at the time of delivery. The cove had been physically and visually integrated into the larger body of water at the time of the conveyance to Phillips, so the deed expressly excluded the cove and any land beneath it. In fact, while irrelevant to this objective process of deed interpretation, the record reflects that this is precisely the subjective impression Phillips was under when he bought the property, that even he thought Lot 89 extended only to the edge of the cove, then only learned the cove's origin a year later.

Phillips argues that taking Item 11 like this to its literal end, that the earth under the cove is no longer part of Lot 89, allows a non-owner to divest an owner of similar lakefront property by committing an unpermitted excavation and trespass. Indeed, this is an unusual case. But Phillips's view wrongly presumes title to the submerged land vested in Phillips at all, and we have just explained why it never did. Divestment implies a prior vesting. Perhaps Mr. Young himself would have had a claim of trespass or recovery of land against Rosquist, having been the title owner in possession of Lot 89 when

15

the land was excavated. But we need not resolve that question because Phillips is without title to the submerged portion of Lot 89 under the plain language of the deed. He therefore lacks standing to bring a recovery action or trespass action.

**B. Phillips has standing to enforce restrictive covenants, but the trial court's injunction must be vacated as an abuse of discretion.**

The courts below devoted greater discussion to whether Phillips was entitled to recover damages for trespass or to recover land adversely held than they did to the covenant restrictions. The lower courts more or less treated the violation as a circumstance evincing a former trespass by Rosquist, and little more. The Court of Appeals in particular concluded Phillips could not enforce the covenant restrictions because Rosquist had only an executory interest in Lot 92 when he dug out the cove but before he had closed on the property and acquired legal title. Without legal title under deed to Lot 92, it concluded, Rosquist was not bound by the restrictive covenants.

We find the Court of Appeals' conclusion lacking. Rosquist had already contracted to purchase Lot 92, a parcel subject to mutual restrictive covenants under a common plan. He would then close on the lot later that year after construction of his residence was finally complete on Lot 92. Generally, when a party signs a contract to purchase real estate, the purchaser is viewed as owner of the land in equity, i.e., he has equitable title.[28] "It is an ancient but enduring principle that equity regards as done that which ought to have been

---

[28] *See Benjamin v. Dinwiddie,* 10 S.W.2d 620, 621 (Ky. 1928).

16

done."[29]   Where a claimant like Phillips seeks a remedy in equity for violation of a restrictive covenant, as this injunction to refill the cove would be, such principles of equity apply.  So, at least in equity, Rosquist owned Lot 92 subject to the restrictions mutually burdening Lots 89 and 92, having obtained equitable title via contract with constructive notice of the recorded covenants.[30] Any demonstrable violations of such covenants are to be treated as if Rosquist had at that time held full legal title to Lot 92.  We therefore reject the Court of Appeals' conclusion that Rosquist was not subject to the restrictive covenants and that Phillips had no claim to make to enforce them.

Among the relevant covenant restrictions, Item 6 of the Subdivision Plat states: "There shall be no building other than approved private docks permitted with the designated building setback around the lake, and there shall be no building erected within the boundary of any drainage, utility, or other easement."  Item 8 states: "There shall be no earth moving, grading, or other excavation by any lot owner within the boundaries of any drainage easement designated as such on this plat, unless the same shall be first approved by the developer, its successors, or designated assignees."

Rosquist was found by the trial court as a matter of fact to have engaged in unapproved excavation and placing an unapproved dock to float on the cove.

---

[29] *Johnson v. Potter*, 433 S.W.2d 358, 362 (Ky. 1968).

[30] 20 Am. Jur. 2d *Covenants* § 256 (2005) ("The enforcement against a purchaser with notice rests upon the principle that it would be inequitable to permit such an owner, while enjoying the fruits of and claiming under the grant, part of the consideration for which the benefit is promised by the covenant, to destroy such benefit by violating the covenant.").

Both of these acts were done to or over areas of the development that were not only part of another lot, Lot 89, but land that also happened to be subject to a drainage and utility easement as shown on the Subdivision Plat. Clearly, Rosquist violated the covenants of his title. Having established Rosquist's violation, only Phillips's ability to enforce the covenant remains in question.

Generally, a landowner benefited by mutual restrictive covenants may bring an action to enforce the restrictions against any violator in the community so bound.[31] For purposes of establishing standing to enforce the covenant terms, Phillips's claim does not require title to that submerged land. He must only prove that his Lot 89 is benefited by the covenants and Rosquist is bound.[32] That Lot 89 is benefited is evident from a review of the Subdivision Plat. So Phillips's last possible claim against Rosquist may be brought as an action for breach of covenant.

The trial court issued the injunction, at least in part, to enforce the covenant restrictions. Still, there are limits on the availability of equitable remedies for breach of restrictive covenants. It has been observed: "It is contrary to equity and good conscience to enforce rights under restrictive building covenants where the defendant has been led to suppose by word, conduct, or silence of the plaintiff that there are no objections to his or her

---

[31] *See* 21 C.J.S. *Covenants* § 70 (2021); 20 Am. Jur. 2d *Covenants* § 252 ("[T]he right to enforce [a covenant restriction] may be exercised by subsequent grantees against any purchaser who takes land in the tract with notice of the restrictions, and a purchaser has such notice whenever the restrictions appear in a deed or in any other instrument in his or her record chain of title.").

[32] 21 C.J.S. *Covenants* § 70.

18

operations."[33]  The issuance of an injunction depends on the equities between the parties, and where, as here, a great injury will be done to the defendant by enforcement, with very little benefit, if any, to the plaintiff, we must deny equitable relief.[34]  While we need not pass on the applicability of the doctrine of laches, it still holds true in equity that an application of an injunction to remove an offending building or structure generally must be made more promptly after discovery.[35]

For twelve years before the underlying action, Rosquist enjoyed the cove without official objection and would only now be forced by injunction to pay approximately $80,000 to "restore" a relatively small portion of land roughly to its contours as they were in 1999.  This cove was an obvious physical condition when Clark, the grantee on the deed, purchased Lot 89 from Young.  Clark and Phillips presumably accounted for this in purchasing Lot 89, demonstrated by their own testimony, having originally understood the property line to run along the cove's waterfront boundary.  The only negative effect of the cove on their use and enjoyment of Lot 89 is the shallow cove's tendency in the summer's heat to emit fetid odors and harbor insects, a condition not unexpected by those who choose to live lakeside.  But even after learning the condition violated the covenant a year after purchase, Phillips delayed some

---

[33] 20 Am. Jur. 2d *Covenants* § 229.

[34] *Id.* at § 269.

[35] *Id.* at § 273.

19

four more years before asserting a claim, a total of five years of non-adversarial ownership. This four-year delay is without explanation in the record.

Equity cannot be invoked here to restore to Clark and Phillips something not even they thought they were entitled to when they purchased Lot 89. Under these circumstances, we cannot readily conceive of an equitable remedy available to Phillips, whether by injunction or otherwise, fundamentally because we see no way that Phillips has been meaningfully deprived of the value of the lot or burdened with any significant liability. A more expeditious and conscientious enforcement effort would, perhaps, present different considerations for a court in equity, but such a delay in action and lapse between interested parties hardly supports such an injunction as the one here ordered.[36] Maintaining the status quo between the parties is the most just outcome. The trial court's injunction order was an abuse of discretion, so the Court of Appeals did not err by vacating it albeit for reasons different from those we have discussed. Accordingly, Phillips's enforcement of the restrictive covenant as to the cove must likewise be dismissed.

### C. The Judge of the Court of Appeals should have recused himself because his impartiality could have reasonably been questioned under the circumstances.

We only briefly alluded above to the recusal-relevant facts. Before the Court of Appeals issued its opinion on Phillips's property claims, Phillips

---

[36] *Bewley v. Stieff*, 273 S.W.2d 833, 835 (Ky. 1954) (considering a substantial lapse in time and the remoteness of interested parties significant reasons to deny equitable relief).

sought by separate order for then-Judge Robert Johnson of the Court of Appeals to recuse.

Judge Johnson was a Scott County Circuit judge when this action was first brought. He had previously recused himself as a trial judge from another case involving the VEHOA as a party because his wife, Rebecca Johnson, held an active position as the president of VEHOA and because of the Johnsons' apparent association with Rosquist, who sat on the VEHOA Board at the time. Judge Johnson also lived in Victoria Estates throughout the pendency of the present action and was Rosquist's neighbor. Judge Johnson was later appointed by the Governor to the Court of Appeals. Of course, by then, this case had made its way to the Court of Appeals via Rosquist's appeal from the trial court's injunction.

Phillips maintains that the conflicts of interest for which Judge Johnson recused himself as a trial judge were similarly present in this case. But beyond those alleged conflicts, Phillips points now to several other circumstances he raised to support recusal. Seemingly uncontradicted circumstantial evidence indicates that before and during the pendency of the appeal below, several things happened: as VEHOA president, Rebecca Johnson, was willing to advocate non-enforcement against Rosquist's covenant violations pending the appeals; that about two years before Phillips's motion for Judge Johnson's recusal, Johnson had attended a VEHOA meeting in which Phillips raised and discussed this case; that after the trial court issued the injunction order, Rebecca Johnson, still the president of the VEHOA, recommended that

21

Rosquist appeal the trial court's order; that according to the undisputed assertions of another VEHOA Board member, submitted by affidavit, Rebecca Johnson gave Judge Johnson's personal cell number to Rosquist, apparently for the purpose of discussing this specific case; and that, in general, the Johnsons were "obviously" friendly or were, at the very least, closely acquainted with Rosquist. Perhaps most concerning to Phillips, when Rosquist was ordered to remove his dock and canoe from the cove, a very similar green canoe was found at the Johnsons' residence a week later. This canoe would appear to be the same one, or at least a very similar one, indicating some sort of undisclosed knowledge or "ex parte transaction," as Phillips puts it, between Rosquist and the Johnsons. Phillips's motion to recuse was served in late March 2018. When this canoe was found in Judge Johnson's yard, Phillips moved to supplement the motion to recuse with this new evidence. Both the motion to recuse and the motion to supplement the motion were denied by the full Court of Appeals panel in July 2018.

In response to Phillips's motion to recuse, the Court of Appeals essentially acknowledged the Johnsons were friends with Rosquist and that the circumstances Phillips raised were "interesting." But it was satisfied that Judge Johnson did not recall hearing about the case during the VEHOA meeting he attended, nor had he specifically talked to Rebecca Johnson or Rosquist about the case. The friendship was primarily between Rebecca Johnson and Rosquist through the VEHOA, not with Judge Johnson himself. And in any case, the Johnsons' friendship with Rosquist did not create a bias

22

Judge Johnson would actually act upon, and he denied having any prior knowledge of the case that would prejudice one party or the other. Of course, because the Court of Appeals then found in favor of Rosquist, Phillips asserts Judge Johnson's bias became more or less apparent. Phillips appealed the denial of the recusal motion to this Court.

We recently revised our standard of review for the denial of a motion to recuse in *Abbott, Inc. v. Guirguis*.[37] This Court settled on a de novo standard of review, a change from prior authority applying an abuse-of-discretion standard.[38] Because any judge, however candid, will naturally be loathe to acknowledge the judge's own partiality or bias,[39] compounded by the judge's general duty to hear and decide matters assigned to the judge,[40] a reviewing court gives a motion to recuse fresh eyes, owing no deference to a refusal to recuse.[41]

This Court has granted comity to KRS 26A.015(2), which provides:

Any justice or judge of the Court of Justice or master commissioner shall disqualify himself in any proceeding:

> (a) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceedings, or has expressed an opinion concerning the merits of the proceeding; [or]

---

[37] *Abbott, Inc. v. Guirguis*, No. 2018-SC-0577-DG, 2021 WL 728860 (Ky. Feb. 18, 2021).

[38] *Guirguis*, at *5.

[39] *Id.*

[40] Kentucky Supreme Court ("SCR") 4.300, Rule 2.7: "A judge shall hear and decide matters assigned to the judge except when disqualification is required by Rule 2.11 or other law."

[41] *See Guirguis*, at *5.

23

[...]

> (e) Where he has knowledge of any other circumstances in which his impartiality might reasonably be questioned.

Under review of KRS 26A.015(2)(e) in particular, consistent with SCR 4.300, Rule 2.11,[42] a judge's alleged bias or partiality is determined under an objective standard from the perspective of a reasonable observer who is informed of all the surrounding facts and circumstances.[43] The circumstances under review are generally gathered from the motion, and *Guirguis* reaffirmed they be stated in an affidavit of factual allegations.[44]

In the order denying the motion, the Court of Appeals panel acknowledged the facts as "interesting," notwithstanding the motion to supplement the facts of the green canoe on Judge Johnson's property. The Court of Appeals, Judge Johnson sitting, was satisfied with Judge Johnson's assurance he had no subjective knowledge or recollection of any interaction closely related to this matter nor harbored any actual bias. Having denied the motion to supplement, the court made no reference to the canoe.

We are less troubled by the circumstances, perhaps even in the aggregate, that Judge Johnson happened to live in the same gated community, that his wife and Rosquist were officers in a non-party HOA, and that the judge may have overheard but then forgot when this case was mentioned at an HOA

---

[42] SCR 4.300, Rule 2.11(A) states: "A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned[.]"

[43] *Id.*

[44] *Id.* at *6.

24

meeting two years before. We ultimately require disqualification of Judge Johnson in this case because an uncontroverted affidavit stated Rebecca Johnson gave Rosquist the judge's personal number to discuss *this case*, that the order describes the judge and his wife as "friends" with Rosquist, the affidavit states they are "obviously friends," not merely acquaintances, and where the judge or his wife seemingly allowed Rosquist to keep case-related belongings, a green canoe removed pursuant to an order, for storage at the judge's home. Given his denial, we need not question whether Judge Johnson *actually* spoke with Rosquist about the case or even knew about the canoe on his property, or whether this was in fact Rosquist's canoe, although such inferences could reasonably arise. We need not wonder whether Judge Johnson *actually* possessed material knowledge or recollection of the facts of this case, because the circumstances reasonably support that inference. We need not find Judge Johnson harbored an actual bias, strong or subtle, simply because this case arose from a neighborhood dispute, he was friends with the party-neighbor, and his wife presumably had some discretion in enforcing the covenants allegedly violated. We need not necessarily conclude Judge Johnson himself was party to an "ex parte transaction" to store Rosquist's green canoe on his property, because, again, that reasonably appears to be a possibility.

Judge Johnson's assurance of impartiality might have sufficed under the more subjective standard of KRS 26A.015(2)(a). But the totality of circumstances permitted a reasonable conclusion of bias in Rosquist's favor, so Judge Johnson was required to recuse under KRS 26A.015(2)(e). The totality

25

of circumstances was enough for a reasonable person to perceive bias or personal knowledge, at least with respect to Judge Johnson. The nature and extent of Johnson's apparent connection to a defendant was just too much. Although Phillips's claims fail on independent grounds of law, Judge Johnson should have recused.

## IV. CONCLUSION

Phillips lacks standing to bring his remaining claim to recover land because he lacks title to the property in question. We dismiss those title-based claims accordingly. Phillips had standing to enforce the restrictive covenant, but we affirm the Court of Appeals decision vacating the trial court's injunction issued in Phillips's favor, finding Phillips is not entitled to injunctive relief under the circumstances. Finally, the Court of Appeals judge should have recused himself, but his failure to recuse had no effect on the outcome of the case.

All sitting. All concur.


COUNSEL FOR APPELLANTS:

Neil Duncliffe
Duncliffe Law Office


COUNSEL FOR APPELLEES:

D. Duane Cook
Cook & Watkins, PLC